Jones, J,
The cause of action as stated in the complaint is clearly for money received by an agent in a fiduciary capacity, which the agent neglects to pay over. It will therefore be perceived that the self same facts which con-' etitute this cause of action, also authorize an arrest under subdivision 2 of section 179 of the Code, and in fact are the foundation upon which the order of arrest is predicated. In such cases it is the law of this court, settled by repeated general term adjudications, that the order of arrest will not be discharged unless the affidavits clearly show such a state of facts as would, if shown at the trial, call either for a dismissal of the complaint by the court, or a direction to the jury to find for the defendant. The grounds upon which the defendant seeks to have the order of arrest discharged# are,
1st. That the moneys in question came into his hands in the course of the prosecution of a joint adventure carried on by him and the plaintiffs upon joint account, and that consequently he is entitled to have the mutual accounts settled, either amicably or by-the aid of a court# and the balance due from him ascertained, before he can be called on to pay over.
2d. That he can only be called on to pay over at the end of the official year mentioned in the agreement between him and the company, to wit, July 31st in each year. That the moneys in question were received subsequent to July 31,1867, and as he cannot be called on to pay over until July 31, 1868, this suit is premature,
*312 3d. That the plaintiff's have broken their contract with him, by discharging him prior to July 31, 1868, and his damages for such breach, and his salary, exceed the moneys in his hands.
4th. That previous to the commencement of this suit and his arrest herein, the plaintiffs commenced an action against him in the Circuit Court of the United States for the northern district of Illinois for the same cause of action, and had him arrested and held to bail therein. That by reason thereof he is entitled, under the rule “Nemo debet bis vexari pro una et eadem causa,” to be discharged from arrest in this action.
Upon examination of the affidavits, I find none of these grounds to be so clearly established as that the court, on the trial of the action, would be called on either to dismiss the complaint, or direct a verdict for the defendant. Under the agreement entered into between the parties, the defendant was the mere employee of the plaintiffs at a stipulated salary, in no way liable for any losses or expenses. True, inasmuch as in addition to his fixed salary of $2000 per annum, he was also entitled to a certain per centage on the profits arising from the business done in the section of the country over which he had the superintendence, his compensation would be more or less according as those profits were increased through his exertions. This per centage is, however, merely a mode adopted for the ascertainment of what sum in addition to the $2000, should be paid to the defendant as further compensation for his increasing the business and profits of the company by his vigilance and exertions, if he succeeded in increasing them. It did not give the defendant any share or interest in the property, effects or moneys of the plaintiffs, or in their business, or in the profits arising therefrom. All such profits, effects and moneys he held as the mere servant of the plaintiffs, and as such was *313 bound to pay and transfer the same to the plaintiffs when requested. The whole tenor of the agreement shows' this to be the relation between the parties. The defendant was not authorized to use the remittances made to him by the local agents, or the premiums received by him, for the payment of losses or of the expenses of the business. The losses were to be paid by drafts from the home office, and the expenses by moneys remitted to the defendant from the home office for that especial purpose.
With respect to the second ground, the remarks above made lead inevitably to the conclusion that the defendant, on the receipt of the moneys (other than those sent him for expenses) by him, was bound immediately to remit them to the home office, and if he did not do so then, after demand made, and perhaps without demand, an action would lie therefor. There is nothing in the agreement which justifies his keeping the plaintiffs’ money in his own possession, without paying it over, for the space of a year.
As to the money sent to pay expenses, the company, if it chose to pay its indebtedness direct to the creditors, instead of through their agent, had the right to dó so, and if they had previously sent money to their agent for such purpose, to demand its return.
With respect to the third ground, there is sufficient evidence to call for a submission to the jury of the question of fact, whether the agreement between the parties was ever, by mutual consent, so modified as to make the fiscal year terminate on the 31st of December, instead of, as mentioned in the agreement, the 31st of July in each year, and subsequently acted upon in reference to such modification by both parties. If the jury should find it urns so modified and acted on, that finding would substantially dispose of these grounds, since, in such event, all that the defendant could claim would be so much of the salary for the year ending December 31, 1867,' as remains unpaid, and *314 the per centage for that year. The plaintiffs claim that the defendant has forfeited his compensation by his misconduct. But it is so questionable, whether the alleged misconduct, to wit, the non-payment of moneys, under legal advice, and the peculiar circumstances of the case,, is sufficient to deprive the defendant of compensation for his services theretofore rendered, although not then payable,-that it seems to me proper to reduce the bail by the amount of such compensation.
The remaining ground is as to the effect of the action and arrest in the United States Circuit Court. It is said that, under the principle contained in the maxim, “ nemo débet lis vexari pro uno et eadem oausa,” this order should be vacated. Translating this Latin maxim into English, it reads: “ Ho one ought to be twice vexed for one and the same cause.” The origin of the expression is to be found in the language used by the éarlier judges in deciding cases before them. The impression which it makes on the memory, by its force and terseness, has caused it to pass into a maxim. But, as with all maxims, so with this, it is necessary, for the purpose of ascertaining its precise meaning, and judging whether it is applicable to any particular case, to look at the adjudged cases where the maxim has been either relied on by the court, or ineffectually urged by counsel. It is well settled, in England, that this maxim only applies where both suits are within the same jurisdiction. And, following" this principle, it is equally well settled that the bringing and prosecuting an action in one of the states of the Union does not, by force of this maxim, prevent the bringing and prosecuting, at the same time, an action in any one or more of the othei states for the same cause. The fact that the first action if brought in a United States court, does not interfere with the bringing of another action in a state court of a state not within the jurisdiction of the United States Court, or *315 perhaps, even, in a state court of a state within such jurisdiction. The reason of this is, that, as the process of a court cannot run beyond the territory over which the government that erected it has, without exceeding its power, given it jurisdiction, it becomes necessary for a creditor to reach his debtor’s property and person when in another jurisdiction, by the process of the courts of that other jurisdiction; in order to do which, he must sue in such courts. And as this necessity may exist as to property in several states at the same time, it would debar the creditor from subjecting his debtor’s property to the satisfaction of his debt, if he were not permitted to sue in each of the states at one and the same time. There are many other cases, in which, to afford proper protection to the creditor, it' is necessary to permit him, while prosecuting an action in one jusisdiction, to commence and prosecute another in another jurisdiction. It would seem that the permission to bring several actions for the same cause in different jurisdictions, at the same time, would carry with it a right to use in each jurisdiction all the remedies and processes allowed by its laws to be used in aid of such action, This, however, is not the result. From the very same reason on which the permission to sue is founded, there springs to the court the power to prevent its processes from being used unnecessarily to the harassment of the defendant. The doctrine that the rule of “ nemo debet bis,” &c. does not apply so as to prevent the bringing and prosecution of various suits for the same cause in different jurisdictions, at the same time, does not extend so far as to hold that a plaintiff has an absolute right, contrary to that rule, to use the processes of each of those jurisdictions' for the needless vexation of the defendant. These principles are fairly deducible from the cases of Imlay v. Ellefsen, decided in England in 1802, (2 East, 453,) and Mitchell v. Bunch, (2 Paige, 620.) In *316 Imlay’s case the defendant, by leave of the court, was holden to special bail. A motion was made to discharge Mm on common bail, on the ground, among others, that the plaintiff had previously commenced an action against the defendant, for the same cause, in ¡Norway, and had had the defendant holden to bail in that action, and that that action was still pending. Lord Ellenborough, in deciding the motion, said: “ This is an application to the discretion of the court. And, to be sure, it would have been competent to the defendant to have shown that he had been before holden to bail in this country; because no man ought to be twice vexed for the same cause. But the question here is, whether we have presented to us, with sufficient distinctness, that the defendant stands in the situation of having been holden to bail in ¡Norway, so that the plaintiff has the same security for his demand, and might have all the benefit of prosecuting his suit there which he has here. And as we do not see that such is the case, we do not feel ourselves warranted in taking from him the benefit he is entitled to from the laws of this country. ¡Not knowing what the laws of ¡Norway are in this respect, I cannot say that the plaintiff would have the same benefit, from what has taken place there, as he will have by the present proceeding.” The clear import of this language is, that if the court had had knowledge that, by the laws of ¡Norway, the plaintiff would have the same benefit, from what had taken place there, as he could obtain in the proceeding before the court, the principle of “ nemo his vexari ” would have been applied, and the defendant either discharged or the plaintiff compelled to elect in which suit he would hold the defendant to bail. The principle involved in the above language of the court, in Imlay’s case, was applied to the case of Mitchell v. Bunch, (2 Paige, 620,) and, by its application, the plaintiff, who had commenced an action in the United States *317 Circuit Court for the southern district of Yew York, and also one in the court of chancery for the state of Yew York, was compelled to elect in which one he would hold the defendant to bail. The chancellor in this case of Mitchell v. Bunch, after referring to the case of Inlay and others, says: “But, I apprehend, the principle of these decisions, (that is, the principle that the defendant could not be discharged because the court had no knowledge of the effect of holding to bail in Yorway, and not the principle involved in the language of the court, that if the court had had such knowledge, and could have seen that the plaintiff could have got the same benefit in that proceeding before the court, the defendant would have either been discharged or the plaintiff'compelled to elect,) can hardly be extended to the Circuit Court of the United States. This court will judicially notice the fact that the arrest of the body of the defendant on mesne process, in that court, is for the purpose of compelling him to pay the debt or to surrender himself in execution in satisfaction thereof. * * * It certainly cannot be necessary for the protection of the complainant’s rights that the defendant should be compelled to give security in two different suits pending at the same time in different courts, and for the recovery of the same debt. The ne exeat must be discharged, unless the complainant consents to release the defendant from his arrest in the Circuit Court, upon his entering an appearance or filing common bail in that suit.”
Applying the above principles to the case at bar, I find myself laboring under the same difficulty as the learned judge in Imlay’s case. The effect of, and. end to be attained by, the arrest in the United States Court, depends upon the law that obtains in the state of Illinois. (Conkling’s Treatise, page 206.) Of this law I cannot take judicial notice; and no proof concerning it having been adduced, I must, therefore, say, in the language of Lord *318 Ell enb oro ugh, that, as I cannot see that the defendant has been holden to bail in Illinois, so that the plaintiff has the same security for his demand, and might have all the benefit of prosecuting his suit theré as here, I do not feel myself warranted in taking from him the benefit he is entitled to from the laws of this state. Even if affidavits had been produced, showing that the law of the state of Illinois as to arrest and bail, and to the benefit to be derived therefrom, was precisely similar to that of this state, still it would be my duty to give the plaintiff, being a corporation of this state, its election as to which arrest it would retain, following, in this respect, the case of Michell v. Bunch. Whether that privilege would be extended to a plaintiff, not being a resident or corporation of this state, is not presented for decision. Whatever may be the rule as to non-residents, residents are entitled to the aid, benefit and protection of the laws of their domicil, the courts, however, taking care that residents, in invoking that aid, protection and benefit, do not unduly vex the person against whom the same is invoked.
The motion to vacate the order of arrest must be denied, and the amount of bail must be reduced to $7500.
The denial of the motion to vacate must be without prejudice to the right to renew on affidavits, showing what the law of Illinois is as to arrest, bail and the benefit to result therefrom, unless the plaintiff stipulates to release the defendant from Ms arrest in the suit in the United States courts, upon filing common bail in that suit.