180 So.2d 800 (1965)
Mrs. Maud SNIDER
v.
Emmett BOZARTH.
No. 1964.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1965.
Robert J. Oster, New Orleans, for plaintiff-appellant.
Sydney J. Parlongue, New Orleans, for defendant-appellee.
Before McBRIDE, HALL and BARNETTE, JJ.
HALL, Judge.
*801 Plaintiff brought suit on a promissory note and obtained judgment against defendant for the amount due thereon, plus interest and costs. The Trial Court, however, refused to condemn defendant to pay attorney's fees as provided for in the note and as prayed for by plaintiff. Plaintiff prosecutes this appeal from that portion of the judgment which failed to award her the attorney's fees. Defendant neither appealed nor answered the appeal and the remainder of the judgment is now final, the only matter before us being the question of attorney's fees.
The note sued upon is a demand note for $40,000.00 dated January 2, 1963. It provides for interest to be paid thereon monthly from date until paid at the rate of 6% per annum. It further provides: "If this note be not paid when due and should be placed in the hands of an attorney-at-law for collection, there shall be due attorney's fees hereby fixed at fifteen per cent." At the time plaintiff filed suit the principal amount of the note had been reduced by payment to $35,000.00 and interest had been paid to October 1, 1964.
Plaintiff filed suit on November 13, 1964, after which, on or about the last day of November, 1964, she received a check from defendant for $200.00, which she held but did not cash, and sometime in December defendant sent her another check for a like amount which she refused to accept. These two checks purportedly covered two monthly interest payments on the note, defendant having customarily paid interest at the rate of $200.00 per month even after the principal of the note had been reduced.
Although the Trial Judge did not give any written reasons for judgment it is abundantly clear, from many statements dictated by him into the record during the trial, that the reason for his refusal to allow attorney's fees was because plaintiff had never made written demand on defendant for payment of the note prior to filing suit. For instance on page 38 of the record we find the following statement by the Court: "* * * now, it is the Court's opinion that the demand must be of the same formal requisites as the note itself, and it must be in writing, and that the note could not mature and did not mature on any oral request for payment * * *."
At the outset we are constrained to observe that we know of no law or jurisprudence which requires that the demand for payment of a negotiable demand note must be in writing in order to mature the obligation.
A promissory note made payable on demand, although due and demandable from the moment of its execution, does not become overdue and in default until after demand for its payment has been made. (See Holstead v. Lewis, La.App., 160 So. 834, 837). Since attorney's fees stipulated for in a note are considered as being in the nature of "liquidated damages," (See W. K. Henderson Iron Works & Supply Co. v. Meriweather, 178 La. 516, 152 So. 69) our Courts have refused to enforce the stipulation where the maker has not been put in default by a prior demand for payment, or where at least no showing is made that such a demand would have been impractical and useless or where it is not shown that some other justification existed for employing an attorney to enforce collection.
Although it is conceded that no written demand was made upon defendant for payment of the note, plaintiff contends that many verbal demands were made upon him prior to the filing of suit. Defendant denies that any such demands were made. Since the Trial Judge based his judgment on the fact that no written demand had been made he did not decide this factual dispute, and we must necessarily do so without the benefit of his views.
Plaintiff testified that she demanded payment of the note "many times"; that she also had her daughter, who was defendant's wife, inform him that she needed and wanted her money. In May 1964, in response *802 to one of these demands, defendant paid $5,000.00 on account of the principal of the note. Plaintiff testified that upon receiving this payment she talked to defendant over the telephone and told him "I don't want just this much, but I want my money in full." Defendant denied talking to plaintiff herself on this occasion but admits that he knew she was asking for the money back and admits informing her through his wife that he couldn't pay any more. Defendant was insisting throughout that since he had borrowed the money to be used as the down payment on a home bought in anticipation of his marriage to plaintiff's daughter, the payment of the note should come out of the sale of the home.
The testimony further shows that plaintiff consulted an attorney sometime during the month of October 1964, and upon his advice made a last attempt to secure payment of the note. She testified that she talked to defendant over the telephone on November 9, 1964, just prior to the filing of suit, and again demanded payment of the note. According to her testimony his response was that "* * * he would never pay it; that if there was any way whatsoever to get out of it he would never pay it." She also testified as follows:
"Q. And when you told him on the phone you would have to sue himon November 9thsue him for what?
"A. I told him I would have to sue him for my note.
"Q. Did he respond to that?
"A. He said that he just couldn't pay it and wasn't going to pay it and didn't care if he would ever pay it and if there was any way out he wouldn't pay it."
Defendant denied having any telephone conversation whatever with plaintiff but the fact that the conversation took place is corroborated by his wife, from whom he was then separated. Credence is also lent to this conversation by defendant's pleadings in answer to the suit, wherein he denied all liability on the note, and plead lack of consideration; that the $40,000.00 was a gift; that it was never to be repaid except out of the sale of the house; that at no time was he to be held personally liable thereon; that in fact the note sued upon was intended to be destroyed.
No purpose would be served by further detailing the testimony. We are convinced that payment of the note was demanded prior to the filing of suit and that the employment of an attorney to enforce collection thereon was both justified and necessary.
Defendant's contention that plaintiff is estopped to claim attorney's fees by reason of the fact that she accepted regular monthly payments of interest "both before and subsequent to the filing of suit" becomes without merit in view of our holding that a demand for payment of the note was made prior to suit, there being no suggestion that the maturity of the note was extended by the interest payments.
For the foregoing reasons the judgment appealed from is amended by adding thereto and incorporating therein the following paragraph:
"It is further ordered, adjudged and decreed that there be further judgment herein in favor of the plaintiff, Mrs. Maud Snider, and against the defendant, Emmett Bozarth, in the full sum of $5,250.00 as attorney's fees."
As so amended and in all other respects the judgment is affirmed, costs of this appeal to be borne by defendant-appellee.
Amended and affirmed.