284 So.2d 351 (1973)
GUARANTY BANK & TRUST COMPANY
v.
QUAD DRILLING CORPORATION et al.
No. 9397.
Court of Appeal of Louisiana, First Circuit.
May 30, 1973.
Rehearing Denied July 5, 1973.
Writ Refused August 31, 1973.
*352 Timothy Higgins and James H. Morrison, Hammond, and Sam Monk Zelden, New Orleans, for appellant.
Iddo Pittman, Jr., Hammond, for appellees.
Before LOTTINGER, ELLIS and CRAIN, JJ.
CRAIN, Judge.
The matter before us involves a suit on a promissory note brought by the holder, Guaranty Bank and Trust Company, against Quad Drilling Corporation as maker, M. H. Sneed, Jr., W. J. Sneed, and the succession representatives of T. L. Mydland, as endorsers. The promissory note in question was for $20,000.00 together with interest at the rate of seven percent per annum from March 15, 1968, payable 60 days after that date. The note further provided for twenty-five percent attorney fees . . . "on the amount sued for, or recovered without suit, by sale or collection of the securities, in case of suit or legal services in or out of court."
A default judgment was taken against all the defendants with the exception of the representatives of Mydland succession against whom all rights were reserved.
*353 The succession representatives filed exceptions of no cause or right of action and also filed answer denying the allegations of plaintiff's petition and further asserting a third party demand against the makers and endorsers of the note. During the course of the litigation, the sum of $20,835.98 was placed in the registry of the court. This amount represented the principal and interest due through December 31, 1968. Plaintiff-appellee withdrew this sum and this amount was not an issue at the trial on the merits. At the conclusion of the trial, the court signed a judgment in favor of plaintiff-appellee and against defendant-appellants for interest at the rate of seven percent per annum on $20,000.00 from December 31, 1968 until February 20, 1970, and also for the additional sum of twenty-five percent of $20,835.98 plus twenty-five percent on the interest from December 31, 1968 until February 20, 1970, and also for the additional sum of twenty-five percent of $20,835.98 plus twenty-five percent on the interest from December 31, 1968 until February 20, 1970 as attorney's fees. From this decision, the defendants have appealed.
The facts of this unusual case can be summarized as follows: The note in question was endorsed by T. L. Mydland on March 15, 1968. Prior to its coming due on May 15, 1968, Mydland died and Patricia Mydland and Donald Chapman were appointed as testamentary co-executors for his succession.
On April 9, 1968, one of the succession representatives received a copy of a letter to Quad Drilling advising that the loan represented by the promissory note in question would not be renewed. On April 19, 1968, a letter was sent to one of the attorneys for Mrs. Patricia Mydland advising of Mydland's endorsement of the Quad Drilling note and that it would be payable at the date of maturity. On September 9, 1968, the appellee through Fred Compton, its vice-president, sent a letter to Sam Zelden, an attorney for Mrs. Mydland, advising of the delinquency of the Quad Drilling note and providing certain other information regarding it. On November 1, 1968, the attorney for Guaranty Bank wrote the endorsers of the note including Zelden as the attorney for Mrs. Mydland, advising that the note had been placed with him for collection and further demanding payment within 10 days. On November 12, 1968, a letter was sent to Donald Chapman, the other coexecutor of the Mydland estate, by Fred Compton advising of the indebtedness. On December 11, 1968, Mrs. Mydland acknowledged the indebtedness and agreed to pay it in the course of the administration of the estate.
On December 14, 1968, an order was executed and rendered by the court authorizing the co-executors to pay to Guaranty Bank $20,000.00 plus any accrued interest. An offer to make payment of the principal and interest due was made to the bank through its president on December 23, 1968. This offer was refused. On January 2, 1969, funds were placed in the registry of the court representing the principal and interest due at that time calculated by the succession representatives. A letter was sent by one of the attorneys for the succession representatives to the bank advising of the deposit and assuring the appellee that any discrepancy in interest would be taken care of. Later during the course of the litigation the plaintiff withdrew this sum from the registry of the court without prejudice to its claim for attorney's fees. The appellant strenuously contends that attorney's fees are not recoverable under the circumstances of this case. We agree with this contention.
It is well-settled under our jurisprudence that provisions for attorney's fees in contracts including promissory notes are in the nature of agreements for liquidated damages. Accordingly, if a note is not paid at maturity in accordance with its terms and if it becomes necessary for an attorney to be employed to collect the amount due, then the attorney's fees can be properly awarded against the party in default as stipulated in the note. Snider v. *354 Bozarth, 180 So.2d 800, (La.App. 4th Cir., 1965); Holstead v. Lewis, 160 So. 834, (La.App. 2d Cir., 1935).
Regarding the test of "necessity" the court in Holstead v. Lewis, supra, stated:
"It must appear that the status of things, when the obligation matures, is such that the incurring of the fee by employment of counsel to collect the obligation or to closely watch matters to insure collection eventually is justified." supra, p. 837.
Also in the case of Snider v. Bozarth, 180 So.2d 800 (4th Cir., 1965), regarding stipulations for attorney's fees, the court stated:
". . . our Courts have refused to enforce the stipulation where the maker has not been put in default by a prior demand for payment, or where at least no showing is made that such a demand would have been impractical and useless or where it is not shown that some other justification existed for employing an attorney to enforce collection." supra, p. 801.
In the case at bar, the facts can lead to no other conclusion than that the employment of an attorney to collect the amount due from the appellants was unjustified.
Where a creditor such as the appellee in the case at bar has a claim against an estate under administration, he is required to present a written claim for acknowledgment and payment in due course to the succession representative. La.Code of Civil Procedure, Art. 3241. The requirement is necessary for the orderly administration of the estate and for the preservation of as much of the estate as possible for payment of debts or for the payment of heirs or legatees. The procedure is designed to prevent the succession representatives from encountering unnecessary expense such as creditor's claims for attorney's fees for obligations of which they are unaware or for which no demand for payment has been made.
In the case at bar, the first written instrument presented to a succession representative which could possibly have been legally sufficient as a claim against the estate for acknowledgment and payment was the letter from the appellee bank to Chapman, the co-executor, dated November 12, 1968. The record further reveals that this claim was acknowledged within the required thirty day period and in due course, payment was tendered to the appellee. Under the circumstances, there was no real necessity for employing an attorney to collect the amount due from the succession representatives. The attorney's advice as to how to properly present a claim may have been sought; however, the contractual stipulation for attorney's fees cannot resonably be interpreted to require the obligor to pay the cost of legal services of that nature.
The facts further reveal that when the succession representatives became properly apprised of the fact that the appellee was calling upon them to acknowledge and make payment of the claim arising from the maker's default on the note, then the matter was expeditiously handled, the claim acknowledged and payment tendered. Although the amount of the payment tendered to the appellee may not have included the actual amount due insofar as the interest was concerned, the succession representatives informed the appellee that any additional interest would also be paid.
The appellant next contends that the portion of the judgment awarding interest from December 31, 1968 through February 20, 1970 was unjustified. A close examination of the record, especially the testimony at the trial, will reveal that the sole matter in issue was the question of attorney's fees. The record reveals that during the course of the litigation, the principal and interest were paid in full by the appellees. Mr. Pattennote, of the appellee bank, responding to a question propounded *355 regarding the principal and interest due, stated that there is ". . . no question on our part. No, sir. The bank was paid in full and this is purely on the attorney's fees." Also in the trial court's reasons for judgment, the judge reiterated the assumption that the attorney's fees were the only matter in issue. The judgment subsequently rendered, however, did provide for interest. We can find no evidence in the record to support the award of interest by the trial court as against the appellant. On the contrary, the evidence leads to the conclusion that the question of the principal and interest was completely settled and payment made and accepted before the trial on the merits. Therefore, the trial judge's award must be reversed in this respect.
Appellant filed exceptions of no right and no cause of action which were referred to the merits. Appellant claims that appellee's original petition was defective in that it did not allege that the succession refused to acknowledge the claim. Obviously, the succession representatives did not acknowledge the claim for attorney fees or this case would not be before the court. The most the trial court could have done would have been to allow the appellee to amend to state this fact. Consequently, the issues presented could not have been disposed of short of a trial on the merits, so we find no error in the trial court proceeding to trial.
Appellant filed a third party demand against the makers and other endorsers of the note. The trial court granted judgment in appellant's favor on the third party demand. This portion of the judgment must also be reversed. The record shows that third party defendants did not file answer to the third party demand. However, third party plaintiffs did not take a preliminary default against them and consequently cannot recover judgment in this proceeding.
We therefore reverse the judgment of the trial court, and dismiss the suit of appellee, Guaranty Bank and Trust Company, as against Mrs. Patricia Gay Mydland and Donald R. Chapman, as testamentary executors of the Succession of Tennis L. Mydland.
We further reverse the judgment of the trial court in favor of third party plaintiff on the third party demand. We reserve to the co-executors of the Succession of Mydland the right to proceed by separate suit against the makers and co-endorsers of the note in accordance with law.
All costs are assessed to appellees.
Reversed and rendered.