PRICE, Judge.
John K. McGuire, joined by his wife, Elaine McGuire, brought this action seeking judgment declaring a promissory note executed by them in the original amount of $4,000, held by J. M. Bogard, to have been paid and to have the real estate mortgage given to secure the note cancelled. Bogard denied the full amount of the note had been paid and filed a reconventional demand seeking judgment against plaintiffs for the sum of $1,000, plus interest, the balance he contends remains unpaid on the note.
A sale of the mortgaged property was negotiated prior to the trial of this matter. By stipulation, to permit the sale to be consummated, the note was withdrawn from the record, tendered to the clerk of court for cancellation and $1,500 of the proceeds was deposited into the registry of the court to be distributed in accordance with any judgment rendered in this cause.
After trial of the matter the district court found the indebtedness represented *234 by the note to have been extinguished, rendered judgment entitling plaintiff to the full sum deposited, and ordered defendant to pay all costs, including expert witness fees. Defendant’s reconventional demand was rejected.
Defendant has perfected this devolutive appeal and plaintiff has answered, asking that the judgment rendered be amended to award him reasonable attorney’s fees as damages resulting from defendant’s refusal to surrender the paid note for cancellation.
To facilitate an understanding of the issue presented on appeal it is necessary we give a narration of the factual background out of which this litigation arises. Plaintiffs were engaged in the automobile business on Texas Avenue in Shreveport until July of 1968. During its operation Bogard furnished plaintiffs so-called “floor plan” financing for purchase of used automobiles at wholesale to be sold on the lot. On each of these transactions Bogard held the title to the vehicle, as well as a chattel mortgage. When the automobile was sold at retail, Bogard was paid the amount loaned plus a fee of $25 for release of the title and the chattel mortgage. In May of 1967, while plaintiffs were engaged in the car business described above, they borrowed from defendant the sum of $4,000 for purposes other than the floor plan arrangement. A note for that amount identified with a real estate mortgage was executed by plaintiffs and delivered to Bogard to secure the loan. The note was payable in monthly installments of $60 per week.
Plaintiffs contend they made continuous payments to Bogard while engaged in the operation of the automobile business. However, after the closing of the car lot and the final liquidation of all vehicles financed through Bogard, they were uncertain of the exact amount of their indebtedness. They allege that Bogard on November 3, 1969, signed a statement declaring their entire indebtedness to be $2,400. Plaintiffs contend they paid consecutive monthly payments thereafter sufficient to extinguish this balance, plus 8% per annum interest by October 1, 1972.
Bogard denied having signed the written instrument dated November 3, 1969, and gave the following history of financial transactions with plaintiffs. He contends the $4,000 originally loaned to plaintiffs was procured by him from two sources: $3,000 of this amount he borrowed from Commercial National Bank and the remaining $1,000 he took from cash he had on hand. As monthly payments of $60 were made by plaintiffs he applied them to his $3,000 note at the bank and sent plaintiffs a receipt. He contends he had an understanding with plaintiffs that the Commercial National Bank note was to be liquidated first and then he was to receive payment of the $1,000 advanced by him from present funds, plus 8% interest.
He further contends an additional $1,070 is owed to him as an accumulated balance on several transactions connected with financing of cars during the period he maintained a business relationship with plaintiffs. No evidence, however, was presented by defendant to corroborate this contention. On the other hand, plaintiffs testified they could not obtain the title to sell any vehicle financed by defendant until payment of the amount advanced for its purchase, at wholesale plus the fee charged by him. Following this sale of all vehicles in the liquidation of plaintiffs’ automobile business, the existence of a balance owed in connection with the financing furnished for purchases of automobiles is inconsistent with the procedure we find was followed by the parties under the floor plan arrangement.
We find the preponderance of the evidence adduced to show the note secured by the mortgage had been paid in full with the payment of October 1, 1972.
Although defendant denies his signature on the instrument purporting to be a statement of the balance owed to him by plaintiffs on November 3, 1969, the signature of *235 defendant was found to be genuine by a handwriting expert and an official of the Commercial National Bank who was familiar with defendant’s signature. There is no allegation by defendant his signature was obtained by fraud, deceit or duress.
The subsequent action of the parties also support the plaintiffs’ position. On the same date defendant acknowledged the total indebtedness to be $2,400, a payment of $70 was made by plaintiffs and a receipt given by defendant showing a reduction of the balance to the sum of $2,330. The next day, November 4, 1969, Bogard went to the Commercial National Bank and renewed the balance on the original $3,000 loan he had in connection with this transaction. The balance owed to the bank on this date was $1,260. He also increased the loan at this time by the sum of $1,070 apparently repaying himself the $1,000 of his personal funds used in making the original loan to plaintiff. The combination of the new money obtained by Bogard on this date, when added to the existing balance of $1,260 equals $2,330, an amount corresponding exactly with the written declaration signed by Bogard as modified by the receipt given for a payment made on the previous day.
By production of their cancelled checks, plaintiffs have clearly shown payment since November 3, 1969, of a sufficient amount to extinguish the $2,330 balance, plus interest. Therefore, the plaintiffs’ obligation under the note and mortgage was extinguished by payment, and the judgment ordering payment of the fund on deposit in the registry of the court to plaintiffs is correct.
Plaintiffs complain on this appeal the trial judge was in error in not awarding them attorney’s fees incurred by reason of defendant’s refusal to surrender the paid note or to cancel the mortgage identified with it upon request. Plaintiffs rely on the provisions of La.C.C. art. 3376, which provides:
“He who shall have subscribed in favor of another, an act bearing a mortgage or privilege, to secure the payment of a debt or the execution of an obligation, may, on the payment of the debt or performance of the obligation, require of the creditor a release of the mortgage or privilege, provided he will defray the expense of the act which it may be necessary to prepare for this purpose; and if the creditor refuse to grant this release, the other party shall have an action to compel him to grant it, and he shall be condemned to pay the costs.”
Plaintiffs argue the provision in the quoted article condemning the creditor to. pay costs if he'should refuse to release the mortgage means all costs incurred in an action to compel cancellation, including attorney’s fees. We have been cited to no case, nor are we aware of any decision interpreting the article as contended by plaintiffs.
We are of the opinion that to entitle the maker of a note to damages, including attorney’s fees, from a creditor for failure to surrender the note for cancellation, he must show the creditor was guilty of negligence, malice or bad faith in the matter. See Paul v. Excel Finance Treme, Incorporated, 212 So.2d 435 (La.App. 4th Cir. 1968).
No allegations of such conduct on the part of the defendant are present in this case.
For the foregoing reasons the judgment appealed from is affirmed at appellant’s costs.