671 So.2d 1283 (1996)
ANGELO AND SON, INC., Angelo J. Piazza, Jr., Individually, and on Behalf of Angelo and Son, Inc., Plaintiffs-Appellees,
v.
RAPIDES BANK & TRUST COMPANY IN ALEXANDRIA, Defendant-Appellant.
No. 95-992.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1996.
*1284 Christopher J. Roy Sr., for Angelo & Son, Inc., et al.
Robert G. Nida, for Rapides Bank & Trust Company.
Before: YELVERTON, WOODARD, and AMY, JJ.
YELVERTON, Judge.
This appeal comes from a breach of contract damage award in favor of Angelo and Patricia Piazza against Rapides Bank & Trust Company in Alexandria. The contract which the trial court found the bank breached was a compromise agreement. The damages the court awarded were the consequences of the breach of the compromise.
The Piazzas and the bank had been doing business for years. The bank floor-planned the Piazzas' car business, and held mortgages on real estate as security. The arrangement worked smoothly until discrepancies caused by bogus charges in the bank records were discovered in their floor-plan accounts. These discrepancies, it was ultimately learned, were caused by a scheme of embezzlement being operated by one of the bank's employees. The entanglement of the Piazzas' account in the embezzlement scheme created bookkeeping problems of some complexity, and raised a dispute between the Piazzas and the bank over what the floor-plan balance was. After this went on for some time, the Piazzas and the bank finally compromised and settled the dispute over what the floor plan balance was, and signed a written agreement. The bank thereafter violated this agreement, as found by the trial judge, and the prolonged consequences of that breach caused the damages and this lawsuit.
The trial court's award of damages was rendered subject to an offset in the amount still owed by the Piazzas to the bank on their floor-plan promissory notes. The bank appealed the award of damages and the Piazzas answered the appeal seeking more damages. Finding no manifest error in the trial court's resolution of these essentially factual disputes, and no abuse of discretion in the determination of damages, we affirm the judgment.

FACTS
We will explain the trial court's decision and our affirmation in greater detail. The Piazzas owned and operated a used car business know as Angelo and Son, Inc. For several years Rapides Bank provided floor-plan financing. Early in the financing relationship, the Piazzas would sign a separate note for each vehicle or group of vehicles that they bought for resale. Later, the bank began using a master note in the amount of $150,000 which was secured by a collateral mortgage on three tracts of land that the Piazzas owned. The bank billed the Piazzas monthly for interest that accrued under the master note. As the Piazzas would sell vehicles *1285 that had been floor-planned, they would pay Rapides Bank for each vehicle, and in return, the bank would deliver title to that vehicle. Once in a while, the Piazzas would sell a vehicle for an amount less than it had been floor-planned. These differences were put in a small side note which was also secured by the mortgage on the Piazzas' property.
The parties added an "indirect financing" arrangement. The Piazzas would take a loan application from a prospective customer, send the completed application to the bank and, if the application was approved by the bank, the loan documents would be used as additional security for the purchase of an automobile.
The business prospered until the fall of 1990. At that time Angelo, in Houston, Texas, to buy some cars from National Car Rental, called Patricia at home and told her to make arrangements with Rapides Bank to have money wire-transferred to National Car Rental. When Patricia called the bank, she was told they were over their credit line of $150,000. Patricia realized that there was a substantial discrepancy between her records and the bank records, but Angelo could not purchase the vehicles from National Car Rental.
Rapides Bank then found that one of its employees, Rick McLaren, was embezzling money. The bank discovered that McLaren had been making bogus charges to floor-plan accounts (there were others besides Angelo and Sons) and transferring the proceeds from these bogus loans into his account.
The Piazzas and the bank undertook to reconcile their records. Mike Newton, another bank employee, examined and compared the records to find out how much money McLaren had embezzled from the Piazzas' floor-plan account. It took a while, but a figure was finally arrived at, and on December 18, 1990, the Piazzas and Rapides Bank signed an "Agreement Concerning Correction of Floor-Plan Line of Credit." In this agreement, Rapides Bank credited the Piazzas' floor-plan account for the bogus charges that McLaren had made and also credited the account for interest that had been charged in connection with the bogus loans.
Along about this time the bank made the decision to institutionally discontinue floor-plan financing. In the process, it thought it found that $16,500 charged to another floor-plan customer, Casey-Dyer Nissan, should have been charged to the Piazzas' account. Rapides Bank then informed the Piazzas that they owed $16,500 more. The Piazzas insisted that they did not owe this additional $16,500. The Piazzas put on evidence that at this point they offered to pay what the records showed they owed, $82,637.22, provided Rapides Bank would release their collateral so that they could obtain floor-plan financing from another bank. The Piazzas contended that the bank refused. The bank denied that the Piazzas ever made such an offer.
Rapides Bank discontinued floor-plan financing to the Piazzas on May 20, 1991. At that time, the plaintiffs got a $100,000 line of credit with Security First National Bank to keep their business going. This line of credit with Security had to be secured by a certificate of deposit in the amount of $100,000. Thereafter, the Piazzas continued to pay off their debt to Rapides Bank as they sold cars under the old floor-plan.
The Piazzas, individually and on behalf of their business, filed this suit against both the bank and McLaren. In addition to damages, the suit sought an injunction to prevent foreclosure. Rapides Bank reconvened seeking payment on the notes secured by the collateral mortgage. McLaren, the bank employee accused of embezzlement, was never served, so the trial court severed the claims against him.
The case was tried. The trial judge, finding that the December 1990 agreement was a compromise foreclosing any demand by Rapides Bank for additional money, ruled for the plaintiffs. The trial judge also found that the conduct of Rapides Bank caused the plaintiffs to suffer damages.
In December the trial judge signed a judgment awarding the Piazzas $39,188.50 in damages and fixing damages at $1,264 a month until the release of the mortgage on their property. On the bank's reconventional *1286 demand, the trial court awarded $33,182.22 on the master note and $5,240 on a side note. Rapides Bank's request for attorney's fees for collection of the amounts due on the notes was denied. An injunction issued against foreclosures on the mortgaged property.

THE BANK'S APPEAL
The first error assigned by the bank has to do with which party had the burden of proof. It claims the trial court erred in making the bank prove that the $16,500 was owed. It argues that, nevertheless, it proved that the Piazzas owed an additional $16,500, and they subsequently failed to prove that they were entitled to an offset or credit. The trial court ruled that Rapides Bank had to prove that this $16,500 was owed on the collateral note in a situation involving floor-plan financing, and that the bank did not prove the debt. The court further concluded that even if the bank had met its proof requirements, the compromise agreement between the Piazzas and Rapides Bank precluded either party from claiming any additional errors. For the following reasons we agree with this latter ruling of the trial court and find it unnecessary to discuss the "burden of proof issue.
The Louisiana Supreme Court in Daigle v. Clemco Industries, 613 So.2d 619, 622 (La. 1993), discussed the law applicable to contracts of compromise as follows:
A transaction or compromise is an agreement between two or more persons, who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. La. Civ.C. art. 3071. Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them. La.Civ.C. art. 3073. The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises. Id. When the parties have compromised generally on all differences which they might have had with one another, the titles which they then know nothing of and which are afterwards discovered are not a cause of rescinding the transaction, unless they have been kept concealed on purpose by the deed of one of the parties. La.Civ.C. art. 3083.

The trial court's finding as to the intent of the parties in entering into a compromise agreement is a finding of fact that will not be disturbed by an appellate court in the absence of manifest error. Pat O'Briens v. Franco's Cocktail Products, Inc., 615 So.2d 429 (La.App. 4 Cir.), writ denied, 617 So.2d 909 (La.1993).
The Piazzas and Rapides Bank entered into an "Agreement Concerning Correction of Floor-Plan Line of Credit" on December 18, 1990. Testimony regarding the events leading up to this agreement was elicited at trial.
Bank employee Mike Newton testified that his job was to determine what mistakes were made in the Piazza account by McLaren's activities. Newton admitted that he did not examine all of the accounts that were handled by McLaren. He acknowledged that he did not check the Casey-Dyer Nissan account handled by McLaren because there was nothing "obviously wrong" with that account. However, Rapides Bank admitted at trial that it could not isolate the $16,500 in dispute from McLaren's activities. In fact, the bank admitted that McLaren prepared the monetary transaction slip that resulted in the $16,500 going to the Casey-Dyer Nissan account instead of the Piazzas' account. The record substantiates that McLaren prepared this monetary transaction slip in October 1990, a couple of months before the Piazzas and Rapides Bank signed the compromise.
Patricia testified that during the reconciliation of her records and the bank's records preceding the agreement, the $16,500 was taken into consideration. Patricia also stated that the purpose of the reconciliation was to go through each and every transaction between Angelo and Son, Inc., and Rapides *1287 Bank. She testified that the reconciliation was not limited to transactions that were "possibly fraudulent" on the part of McLaren. It was her understanding that the matter was finally put to rest.
Angelo testified that the reconciliation of the records and the December 1990 agreement was the result of McLaren's activities in handling their account. He testified that it was his understanding that the agreement put an end to all problems that his business had with the bank.
We conclude that the trial court's finding of fact that the Piazzas and Rapides Bank intended the December 1990 agreement to settle all differences between them, including the disputed $16,500, was not manifestly erroneous because (1) the agreement was intended to correct McLaren's activities with regard to the Piazzas' account; (2) Rapides Bank admitted that it could not isolate McLaren's activities from the $16,500; (3) McLaren entered the monetary transaction slip that charged the $16,500 to Casey-Dyer Nissan's account prior to the Piazzas and Rapides Bank reconciling their records; and (4) the Piazzas understood that the agreement would end all problems that their business had with the bank. Therefore, the trial court was correct in holding that the December 1990 agreement was a compromise and that it foreclosed any demand by Rapides Bank for an additional $16,500.

DAMAGES
Rapides Bank claims the trial court erred in awarding damages to the Piazzas. The trial court awarded damages in the amount of $39,188.50 to the Piazzas due to a breach of contract by the bank in continuing to persist in its efforts to collect an additional $16,500 when that matter had already been laid to rest in the compromise agreement.
The facts revealed that the real estate mortgage on the Piazza property was the primary security for the floor-plan financing of automobiles through the bank. On May 20, 1991, Rapides Bank stopped financing automobiles purchased by the Piazzas and stopped accepting customer loan applications taken by the Piazzas. The trial court found that the Piazzas offered to pay off the mortgage note for the amount due, excluding the $16,500, but that the bank would not agree to cancel the mortgage unless it was paid the amount due plus the $16,500. Whether this proposition was offered and refused was a hotly disputed fact at the trial and pitted one person's word against another. We find no manifest error in the trial court's finding.
The dispute over the $16,500 dragged on for a considerable time. In 1991, when the bank stopped financing vehicle purchases by the Piazzas, the Piazzas were required to make arrangements with another bank for financing automobiles. They were required to provide certificates of deposit as security because their real estate was still encumbered by the Rapides Bank mortgage and could not be used as security elsewhere.
Rapides Bank claims that the trial court erred in holding it liable for damages because it was not in bad faith in refusing to release the Piazzas' property under the mortgage. They cite Williams v. Bank of Louisiana, 7 Rob. 316 (1844), in support of their position that a bank cannot be held liable for damages for failure to cancel the mortgage. Their reliance on this case is misplaced in the present case.
The trial court's basis for an award of damages was not because the bank was found to be in bad faith, nor was it because of the failure of the bank to release the mortgage. The obligation to cancel the mortgage never came into existence because the note secured by the mortgage was not paid. The trial court found the bank failed to abide by the terms of the compromise agreement by insisting on collecting the additional $16,500. That is what ultimately caused this lawsuit. The trial court found that the Piazzas were damaged by breach of this contract and awarded good faith damages pursuant to La. Civ.Code art. 1996.
An award of foreseeable damages under Article 1996 was proper in the present case. The trial court awarded damages in the amount of lost profits. Rapides Bank alleges that the Piazzas failed to establish that lost profits were attributable to its actions. It also claims that the Piazzas failed to establish *1288 with certainty the amount of lost profits they suffered.
The trial court found that the Piazzas' business suffered greatly by reason of the dispute over the balance owed the bank. The court in its reasons for judgment reviewed the testimony of Kurt Oestriecher, a certified public accountant. Oestriecher calculated lost profits of the business beginning in 1991, when Rapides Bank no longer offered floor-plan financing to the Piazzas, and they were required to seek financing elsewhere with other collateral. The trial court found Oestriecher's testimony helpful although deficient in some respects. It found that the deficits only affected the totals arrived at by Mr. Oestriecher and not his method of estimating profits. The trial court then used Mr. Oestriecher's figures and reduced them considering the factors that Oestriecher failed to consider.
The trial court reduced Oestriecher's estimates of lost profits of $42,467 for 1991 to $24,631 to correspond to the months of June through December because floor-plan financing for the Piazzas was not discontinued until May 20, 1991. The court then further reduced the estimates for 1991, 1992, and 1993 by one half to $14,315.50, $5,920.50, and $20,952.50 respectively. This one-half reduction was to reflect the factors not considered in Oestriecher's estimates. The total lost profits awarded were $39,188.50.
The court in Gulf American v. Airco Indus. Gases, 573 So.2d 481, 492 (La.App. 5 Cir.1990), discussed the burden of proof with respect to loss of profits as follows:
A claim for lost profits will not be supported by mere estimate of losses. Loss of profit awards may not rest on speculation or conjecture unless direct evidence is not available to establish this element of damages. `Loss of profits must be proved with reasonable certainty-i.e., the more probable than not standard.' While the absence of independent, corroborating evidence may not be fatal to the plaintiff's burden of proof, the lack of even a minimal degree of detail or specificity as the extent of loss precludes an award. (Citations omitted)
Mrs. Piazza testified that they customarily used the $100,000 of CD's as collateral to secure loans to buy cars in addition to the $150,000 line of credit with Rapides Bank. Essentially, they had $250,000 available to purchase cars. Once Rapides Bank stopped floor-planning vehicles for the Piazzas, and the collateral securing the $150,000 line of credit was not released, the Piazzas only had the $100,000 available to secure a line of credit. Robert Alexander, assistant vice president and commercial loan officer with Security Bank, testified that Security Bank would not take the Piazzas' home and property as collateral because it was already mortgaged by Rapides Bank. The Piazzas were then limited to purchase fewer cars for resale which decreased their inventory. Oestriecher testified that the Piazzas lost profits because they had to reduce their inventory. Oestriecher opined that the unavailability of floor-planning to the Piazzas was the most obvious reason for the decrease in sales in 1991-1993. To estimate what profits would have been, Oestriecher used a conservative growth rate of 15%. Gross profit was calculated at 4%, administrative expenses at 2.5%, and interest expense of the floor-plan at 6/10 of 1% of sales. These numbers were used to calculate the lost profits.
The trial judge noted many factors which would affect Oestriecher's calculations: (1) Rapides Bank continued financing vehicles that were already financed at the bank; (2) 1992 had the highest income; (3) not all vehicles purchased by the Piazzas were floor-planned; (4) the 1988 tax figures were questionable based upon an IRS audit which resulted in net income of $52,954 rather than a loss of $10,782 and; (5) Rapides Bank provided floor-plan financing for half of 1991. The trial judge took these factors into account in making his own, reduced calculation of the loss.
We find that the Piazzas proved by a preponderance of the evidence that they suffered lost profits as a result of the unavailability of collateral. The Piazzas proved that their inventory was reduced and introduced evidence of an expert certified public accountant who accounted for losses. The deficiencies in the CPA's testimony were recognized *1289 by the trial judge and considered, and his estimates were reduced accordingly. Considering the detail presented by the Piazzas, the numbers provided by their CPA, and the trial court's careful explanation of these facts in the awarding of damages for lost profits to the Piazzas, we can perceive no manifest error or abuse of discretion in the award.

ATTORNEY'S FEES
Rapides Bank claims that the trial court erred in not awarding it attorney's fees for collection of the amount owed on the note as provided for in the note.
The master note of $150,000 had a provision for attorney's fees "in event of suit hereon, or if this note is placed in the hands of an attorney for collection after maturity." If a note is not paid at maturity and if it becomes necessary for an attorney to be employed to collect the amount due, then attorney's fees can be properly awarded against the party in default as stipulated in the note. Guaranty Bank & Trust Company v. Quad Drilling Corporation, 284 So.2d 351 (La.App. 1 Cir.), writ denied, 284 So.2d 767 (La.1973); Wood v. Kelly, 359 So.2d 742 (La.App. 4 Cir.1978).
There is no indication in the record that the Piazzas ever defaulted on the note. In fact, Ray Schrock, the special assets manager for Rapides Bank, admitted that since this dispute arose, the Piazzas continued to pay on the master note as they sold vehicles that had been floor-planned. Schrock admitted that, at the time of trial, the principal amount due on the master note had been reduced to $33,182.22. Mrs. Piazza also unequivocally testified that they continued to pay Rapides Bank on the master note as they would sell vehicles that had been floor-planned with the bank.
The demand on the note was asserted by reconvention. The Piazzas did not default on the master note. It was not necessary for Rapides Bank to hire an attorney to "collect" on the note. The trial court did not err in refusing to award attorney's fees to Rapides Bank.

THE PIAZZAS ANSWER TO THE APPEAL
The Piazzas answered the appeal asking for an increase in special damages and additionally for damages for conversion of their mortgaged property. They raised assignments of error in their brief relating to these issues which we address separately.

BAD FAITH
The Piazzas appeal the ruling of the trial court in its failure to find bad faith in refusing to abide by the settlement, and particularly, in refusing to allow a letter into evidence as proof of Rapides Bank's bad faith. The letter is in the record as a proffer. The Piazzas also claim that the trial court erred in not finding that Rapides Bank was in bad faith in refusing to release the mortgage.
With regard to the introduction of the letter, we find that the trial court was correct in refusing to allow this letter into evidence. The bank objected to the introduction of this letter asserting the attorney-client privilege. The letter was written to the bank by its attorney. Its discovery was by accident. Patricia Piazza and Lehman Abshire, a certified public accountant, went to the bank to look at documents and gather information regarding the $16,500 question. This meeting had been set up in advance. Joel Harris, who was unfamiliar with the case, was designated as the person to supply Mrs. Piazza and Abshire with the documents. There was testimony that Harris was specifically instructed not to give them any writing by the bank's attorney. However, two letters written by the attorney were left in the group of documents that Mrs. Piazza and Abshire examined. One of these is the letter that the Piazzas claim the trial court erred in not admitting.
There is no dispute that this letter was prepared by Rapides Bank's attorney in anticipation of litigation. La.Code Civ.P. art. 1424, the "opinion work product" rule, is distinct from and broader than the attorney-client privilege and may encompass any writing prepared in anticipation of litigation. Hodges v. Southern Farm Bureau Cas. Ins. Co., 433 So.2d 125 (La.1983); Stevens v. *1290 Hartford Ins. Co. Of Midwest, 94-523 (La. App. 3 Cir. 11/2/94), 646 So.2d 981, writ denied, 95-311 (La. 3/24/95), 651 So.2d 296.
Pursuant to Article 1424, the court shall not order the production of any document prepared in anticipation of litigation unless it will unfairly prejudice the opposing party. A document that is not discoverable is not admissible at trial over timely objection. Stevens, 646 So.2d 981. Clearly, this letter was intended to be confidential and to remain confidential but was mistakenly provided by an employee of the bank. We find that the trial court did not err in not admitting this letter as it clearly fell under the "opinion work product" rule.
The trial court found that the admissible evidence presented at trial did not demonstrate bad faith. The Louisiana Supreme Court in Ambrose v. New Orleans Police Amb. Serv., 93-3099, 93-3110, 93-3112, p. 8-9 (La. 7/5/94), 639 So.2d 216, 221, reiterated a court of appeal's duty in reviewing factual determinations of a trial court as follows:
Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. (Footnotes omitted)
The trial court specifically found "that the refusal of the bank to abide by the terms of the compromise agreement was a serious error in judgment but not a malicious breach so as to constitute bad faith." The facts admitted into evidence support this finding.
Throughout the trial Rapides Bank was very adamant about its position that the Piazzas owed an additional $16,500. The various employees who testified on behalf of the bank stated that the $16,500 was a loan on two vehicles that had been incorrectly posted to the Casey-Dyer Nissan account. They claimed that this amount should have been posted to the Piazzas' account but never was.
Rapides Bank went to the extent of hiring a certified public accountant to determine whether the $16,500 was owed. After researching the bank's records, CPA John Rozier believed that the funds were advanced to the Piazzas, but the advance was not recorded on the bank's computer system.
The record establishes that the bank felt that it was owed this additional $16,500. The bank made a mistake in not recognizing that the compromise agreement signed in December 1990 related to this transaction, believing that it was not a by-product of McLaren's embezzling activities. When we limit our review to the evidence admitted at trial, we find that the trial court was not clearly wrong in finding that, although the bank made a serious error in judgment, the error did not rise to the level of bad faith.

CONVERSION
The Piazzas also claim that the trial court erred in not awarding damages for the conversion of their property. The Piazzas ask that they be awarded an additional $25,000 each for conversion of their property.
"A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite period of time, is a conversion." Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756, 760 (La.1985).
We have agreed with the trial court that the bank caused damages in this case by insisting on collecting more money when all issues had been put to rest by the December 1990 compromise agreement. If the bank had not insisted on collecting more money, then the Piazzas would have paid the undisputed amount as they offered to do, and their property would have been released from the mortgage. There was still an outstanding *1291 balance at the time of trial. Therefore, there was not a conversion of the Piazzas' property since they still had an obligation to provide collateral to secure the admitted balance of their unpaid notes. The trial court was correct in not awarding damages based on a conversion.
For the foregoing reasons, the judgment of the trial court is affirmed. Rapides Bank and the Piazzas are to share the costs of this appeal.
AFFIRMED.
AMY, J., dissents and assigns written reasons.
AMY, Judge, dissenting.
I respectfully dissent from the majority's conclusion that the trial court's basis for an award of damages was because of Rapides Bank's failure to abide by the compromise agreement. After a thorough review of the trial court's reasons for judgment, I note that the trial court found that Rapides Bank's "wrongful refusal to release a mortgage" was a breach of contract and, awarded damages on that basis. In discussing Rapides Bank's liability in this case, the trial court stated in part:
There is an implied contract in every secured loan that when it is paid, the holder of the mortgage will release the security. Although there was no specific tender in writing by the Piazzas of the amount of the undisputed portion of the loan, the court is convinced that an offer was made and refused by the bank and the mortgage would have been cancelled if the bank had agreed to accept that amount. Accordingly, it is the finding of the court that the bank breached its contract with the Piazzas and they were damaged by reason of said breach.

* * * * * *
Even after examining all of the factors involved, this court finds assessing damages to be very difficult. Mr. Oestriecher's estimates of lost profits failed to take into account certain factors which were either overlooked or which were unknown to him. While totally convinced that the Piazzas suffered damages by reason of the bank's wrongful refusal to release it's real estate security for use elsewhere, this court is unable to determine a specific formula or criteria to use in order to arrive at a specific figure other than Mr. Oestriecher's method.
* * * * * *
The bank's claim for attorney's fees is denied because the reconventional demand for judgment for the amount owed the bank by the Piazzas was not filed until after the breach of its mortgage contract by the wrongful refusal to release the security. The Piazzas' failure to pay the undisputed amount was not a default in view of the bank's prior breach of the mortgage contract. [Emphasis added].
The trial court stated that: (1) there is an "implied contract" in every mortgage that when it is paid the holder of the mortgage will release the security; (2) Rapides Bank breached this contract when it refused to release its security interest on the Piazzas' property when they offered to pay the undisputed portion of the loan; and (3) the Piazzas suffered damages because of Rapides Bank's refusal to release its security interest on their property. The trial court did not award damages for refusal to abide by the compromise agreement. To the contrary, the trial court clearly attributed damages to Rapides Bank's refusal to release its mortgage on the Piazzas' property. The trial court found that the bank was not malicious nor in bad faith; however, it awarded damages in the form of lost profits under La.Civ. Code arts. 1995 and 1996.
I agree with the trial court that Rapides Bank was not malicious nor in bad faith for failing to release its mortgage. Because of this, I conclude that the trial court erred in casting a good faith bank in damages. La. R.S. 9:5174, which provides for a debtor's right to obtain release of collateral upon payment of the obligation, states:
He who shall have subscribed in favor of another, an act bearing a mortgage or privilege, to secure the payment of a debt or the execution of an obligation, may, on the payment of the debt or performance of the obligation, require of the creditor a *1292 release of the mortgage or privilege, provided he will defray the expense of the act which it may be necessary to prepare for this purpose; and if the creditor refuses to grant this release, the other party shall have an action to compel him to grant it, and he shall be condemned to pay the costs.
Under this statute, to entitle the maker of a note to damages from a creditor for failure to surrender the note for cancellation, he must show that the creditor was guilty of negligence, malice or bad faith. Williams v. Bank of Louisiana, 7 Rob. 316 (1844); McGuire v. Bogard, 303 So.2d 233 (La.App. 2 Cir.1974); Paul v. Excel Finance Treme Incorporated, 212 So.2d 435 (La.App. 4 Cir. 1968). The factual finding by the trial court of no maliciousness or bad faith preludes an award of damages in this case.
Obviously, the Piazzas and Rapides Bank disputed whether $16,500.00 was due under the note secured by the mortgage. The record substantiates that when Patricia made the offer to pay the undisputed amount of the note, the Piazzas wanted Rapides Bank to release the entire security under the mortgage so that the Piazzas could use their property as collateral to secure a floor-plan financing note with Security First National Bank. However, the Piazzas did not offer to pay the $5,462.88 side note that was also secured by the mortgage on their property. If Rapides Bank would have released the security under the mortgage, it would have been an unsecured creditor of a potential amount of $21,962.88 (16,500.00 + 5,462.88). While the $16,500.00 was in dispute, Rapides Bank had evidence which it firmly believed proved that the Piazzas owed the disputed amount. Rapides Bank had no improper motive. The only motive Rapides Bank had was to secure the amount that it believed was due under the note. Therefore, I conclude that the trial court erred in awarding damages to the Piazzas.