83 So.2d 449 (1955)
EVER-TITE ROOFING CORPORATION, Plaintiff-Appellant,
v.
G. T. GREEN et ux., Defendants-Appellees.
No. 8381.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
Writ of Certiorari Denied February 23, 1956.
*450 Comegys & Harrison, Shreveport, for appellant.
A. Eugene Frazier, Minden, for appellee.
AYRES, Judge.
This is an action for damages allegedly sustained by plaintiff as the result of the breach by the defendants of a written contract for the re-roofing of defendants' residence. Defendants denied that their written proposal or offer was ever accepted by plaintiff in the manner stipulated therein for its acceptance, and hence contended no contract was ever entered into. The trial court sustained defendants' defense and rejected plaintiff's demands and dismissed its suit at its costs. From the judgment thus rendered and signed, plaintiff appealed.
Defendants executed and signed an instrument June 10, 1953, for the purpose of obtaining the services of plaintiff in re-roofing their residence situated in Webster Parish, Louisiana. The document set out in detail the work to be done and the price therefor to be paid in monthly installments. This instrument was likewise signed by plaintiff's sale representative, who, however, was without authority to accept the contract for and on behalf of the plaintiff. This alleged contract contained these provisions:
"This agreement shall become binding only upon written acceptance hereof, by the principal or authorized officer of the Contractor, or upon commencing performance of the work. This contract is Not Subject to Cancellation. It is understood and agreed that this contract is payable at office of Ever-Tite Roofing Corporation, 5203 Telephone, Houston, Texas. It is understood and agreed that this Contract provides for attorney's fees and in no case less than ten per cent attorney's fees in the event same is placed in the hands of an attorney for collecting *451 or collected through any court, and further provides for accelerated maturity for failure to pay any installment of principal or interest thereon when due.
"This written agreement is the only and entire contract covering the subject matter hereof and no other representations have been made unto Owner except these herein contained. No guarantee on repair work, partial roof jobs, or paint jobs." (Emphasis supplied.)
Inasmuch as this work was to be performed entirely on credit, it was necessary for plaintiff to obtain credit reports and approval from the lending institution which was to finance said contract. With this procedure defendants were more or less familiar and knew their credit rating would have to be checked and a report made. On receipt of the proposed contract in plaintiff's office on the day following its execution, plaintiff requested a credit report, which was made after investigation and which was received in due course and submitted by plaintiff to the lending agency. Additional information was requested by this institution, which was likewise in due course transmitted to the institution, which then gave its approval.
The day immediately following this approval, which was either June 18 or 19, 1953, plaintiff engaged its workmen and two trucks, loaded the trucks with the necessary roofing materials and proceeded from Shreveport to defendants' residence for the purpose of doing the work and performing the services allegedly contracted for the defendants. Upon their arrival at defendants' residence, the workmen found others in the performance of the work which plaintiff had contracted to do. Defendants notified plaintiff's workmen that the work had been contracted to other parties two days before and forbade them to do the work.
Formal acceptance of the contract was not made under the signature and approval of an agent of plaintiff. It was, however, the intention of plaintiff to accept the contract by commencing the work, which was one of the ways provided for in the instrument for its acceptance, as will be shown by reference to the extract from the contract quoted hereinabove. Prior to this time, however, defendants had determined on a course of abrogating the agreement and engaged other workmen without notice thereof to plaintiff.
The basis of the judgment appealed was that defendants had timely notified plaintiff before "commencing performance of work". The trial court held that notice to plaintiff's workmen upon their arrival with the materials that defendants did not desire them to commence the actual work was sufficient and timely to signify their intention to withdraw from the contract. With this conclusion we find ourselves unable to agree.
Defendants' attempt to justify their delay in thus notifying plaintiff for the reason they did not know where or how to contact plaintiff is without merit. The contract itself, a copy of which was left with them, conspicuously displayed plaintiff's name, address and telephone number. Be that as it may, defendants at no time, from June 10, 1953, until plaintiff's workmen arrived for the purpose of commencing the work, notified or attempted to notify plaintiff of their intention to abrogate, terminate or cancel the contract.
Defendants evidently knew this work was to be processed through plaintiff's Shreveport office. The record discloses no unreasonable delay on plaintiff's part in receiving, processing or accepting the contract or in commencing the work contracted to be done. No time limit was specified in the contract within which it was to be accepted or within which the work was to be begun. It was nevertheless understood between the parties that some delay would ensue before the acceptance of the contract and the commencement of the work, due to the necessity of compliance with the requirements relative to financing the job *452 through a lending agency. The evidence as referred to hereinabove shows that plaintiff proceeded with due diligence.
The general rule of law is that an offer proposed may be withdrawn before its acceptance and that no obligation is incurred thereby. This is, however, not without exceptions. For instance, Restatement of the Law of Contracts stated:
"(1) The power to create a contract by acceptance of an offer terminates at the time specified in the offer, or, if no time is specified, at the end of a reasonable time.
"What is a reasonable time is a question of fact depending on the nature of the contract proposed, the usages of business and other circumstances of the case which the offeree at the time of his acceptance either knows or has reason to know."
These principles are recognized in the Civil Code. LSA-C.C. Art. 1800 provides that an offer is incomplete as a contract until its acceptance and that before its acceptance the offer may be withdrawn. However, this general rule is modified by the provisions of LSA-C.C. Arts. 1801, 1802, 1804 and 1809, which read as follows:
"Art. 1801. The party proposing shall be presumed to continue in the intention, which his proposal expressed, if, on receiving the unqualified assent of him to whom the proposition is made, he do not signify the change of his intention.
"Art. 1802. He is bound by his proposition, and the signification of his dissent will be of no avail, if the proposition be made in terms, which evince a design to give the other party the right of concluding the contract by his assent; and if that assent be given within such time as the situation of the parties and the nature of the contract shall prove that it was the intention of the proposer to allow. * * *
"Art. 1804. The acceptance needs (need) not be made by the same act, or in point of time, immediately after the proposition; if made at any time before the person who offers or promises has changed his mind, or may reasonably be presumed to have done so, it is sufficient. * * *
"Art. 1809. The obligation of a contract not being complete, until the acceptance, or in cases where it is implied by law, until the circumstances, which raise such implication, are known to the party proposing; he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination." (Emphasis supplied.)
Therefore, since the contract did not specify the time within which it was to be accepted or within which the work was to have been commenced, a reasonable time must be allowed therefor in accordance with the facts and circumstances and the evident intention of the parties. A reasonable time is contemplated where no time is expressed. What is a reasonable time depends more or less upon the circumstances surrounding each particular case. The delays to process defendants' application were not unusual. The contract was accepted by plaintiff by the commencement of the performance of the work contracted to be done. This commencement began with the loading of the trucks with the necessary materials in Shreveport and transporting such materials and the workmen to defendants' residence. Actual commencement or performance of the work therefore began before any notice of dissent by defendants was given plaintiff. The proposition and its acceptance thus became a completed contract.
By their aforesaid acts defendants breached the contract. They employed *453 others to do the work contracted to be done by plaintiff and forbade plaintiff's workmen to engage upon that undertaking. By this breach defendants are legally bound to respond to plaintiff in damages. LSA-C.C. Art. 1930 provides:
"The obligations of contract (contracts) extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default."
The same authority in Art. 1934 provides the measure of damages for the breach of a contract. This article, in part, states:
"Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, * * *".
Plaintiff expended the sum of $85.37 in loading the trucks in Shreveport with materials and in transporting them to the site of defendants' residence in Webster Parish and in unloading them on their return, and for wages for the workmen for the time consumed. Plaintiff's Shreveport manager testified that the expected profit on this job was $226. None of this evidence is controverted or contradicted in any manner.
True, as plaintiff alleges, the contract provides for attorney's fees where an attorney is employed to collect under the contract, but this is not an action on the contract or to collect under the contract but is an action for damages for a breach of the contract. The contract in that respect is silent with reference to attorney's fees. In the absence of an agreement for the payment of attorney's fees or of some law authorizing the same, such fees are not allowed.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside and there is now judgment in favor of plaintiff, Ever-Tite Roofing Corporation, against the defendants, G. T. Green and Mrs. Jessie Fay Green, for the full sum of $311.37, with 5 per cent per annum interest thereon from judicial demand until paid, and for all costs.
Reversed and rendered.