142 So.2d 518 (1962)
Julian J. LOEB, d/b/a The National Roofing and Siding Company, Appellant,
v.
Myrtis L. JOHNSON, Willie Johnson, Andrew J. Rendon and Lynette Rendon, Appellees.
No. 5565.
Court of Appeal of Louisiana, First Circuit.
May 21, 1962.
Rehearing Denied June 29, 1962.
Reuter, Reuter & Schott by Patrick M. Schott, New Orleans, for appellant.
Sidney W. Provensal and John R. Contois, Slidell, for appellees.
Before ELLIS, HERGET, and MILLER, JJ.
HERGET, Judge.
Plaintiff, Julian J. Loeb, doing business as The National Roofing and Siding Company, instituted suit against Defendants, Myrtis L. Johnson, his wife Willie Johnson, Andrew Rendon, and his wife Lynette Rendon, for damages allegedly sustained by Plaintiff as a result of a breach by Defendants of a contract for roofing and installation of weatherboarding on Defendants' residence. Defendants answered the suit denying liability and reconvened for damages allegedly suffered by them as a result of Plaintiff's action in recording the contract in the Mortgage Records of the office of the Clerk and Recorder for St. Tammany Parish, Louisiana.
After trial of the issues the Trial Court handed down its written reasons for judgment on April 14, 1961 and judgment was signed accordingly on May 8, 1961 in favor of the Defendants and against Julian J. Loeb doing business as The National Roofing and Siding Company dismissing Plaintiff's suit; in favor of defendant in reconvention, Julian Loeb doing business as The National Roofing and Siding Company, and against Plaintiffs in reconvention dismissing the claims for damages in reconvention; and further ordering and directing the Clerk of Court and Recorder of Mortgages for St. Tammany Parish, Louisiana to cancel the inscription of the instrument dated March 5, 1960 between Plaintiff and Defendants *519 recorded in Mortgage Record 157, page 628 of the records in his office. From this judgment Plaintiff brings this appeal and Defendants, Plaintiffs in reconvention, answered the appeal.
On March 5, 1960, Defendants signed an instrument, same being on a printed form prepared by Plaintiff, under the terms of which Defendants entered their order to Plaintiff to perform certain improvements to their residence in St. Tammany Parish consisting of siding, insulation, roofing and installation of gutters. Some confusion arose as to the work indicated to be performed by Plaintiff under said offer and on March 7, 1960 Defendants signed the instrument (similarly on the printed form prepared by Plaintiff, a photostatic copy of which was annexed to and made part of Plaintiff's petition, which instrument, though signed on March 7, 1960 by Defendants, was dated March 5, 1960) in which the work to be undertaken by Plaintiff was clarified. In the instrument it is provided:
"This contract is binding, subject only to acceptance by an executive of the NATIONAL ROOFING & SIDING CO., who reserves the right to reject it without liability on its part.

"It is agreed that this *proposal, properly accepted as above provided,* shall constitute the entire contract between us." (*___* Emphasis supplied)
After Defendants signed the instrument on March 7, they obtained prices and concluded it would be less expensive to brick veneer their home rather than to use the aluminum siding to be furnished under the order to The National Roofing and Siding Company. Accordingly, on March 9, 1960, prior to any acceptance of the offer or proposal by Plaintiff, Defendant, Mr. Johnson, in the presence of other defendants, telephoned the office of The National Roofing and Siding Company informing the person to whom he talked at Plaintiff's place of business that the offer of the Defendants was withdrawn and the proposal canceled. Though Mr. Johnson while testifying as a witness was uncertain of the identity of the person to whom he transmitted the cancellation of his offer, from the testimony of Mr. Julian J. Loeb (who is the Plaintiff doing business as The National Roofing and Siding Company) it is conclusive it was to Mr. Loeb himself that Defendant conveyed this message of cancellation. On March 10, 1960 defendant, Mr. Johnson, called Defendants' attorney who addressed a letter dated March 11, 1960 to Plaintiff reiterating Defendants cancellation of the offer to have the work performed by Plaintiff. On March 10, 1960, following the telephone conversation with Mr. Johnson on March 9, 1960 but before Plaintiff received the letter written by Defendants' attorney on March 11, 1960, Plaintiff addressed a letter by certified mail to Mr. Johnson, (received by Mr. Johnson on March 11, 1960) stating:
"* * * This contract has been recorded and processed and is scheduled to begin within the next ten days, waiting only on you erecting the facia boards for installation of the gutters."
On March 10, 1960 a representative of Plaintiff recorded the contract dated March 5, 1960 executed on March 7, 1960 in the Mortgage Records of the office of the Clerk of Court of St. Tammany Parish, Louisiana.
No work was commenced under the contract and this suit for damages was instituted by Plaintiff.
It is the contention of counsel for Plaintiff that under the provisions of the contract Plaintiff was given a reasonable time in which to accept the offer of Defendants and having accepted said offer within such reasonable time Defendants were bound thereby and Plaintiff is entitled to such damages suffered by him as a result of the cancellation of the contract.
In support of Plaintiff's contention counsel for Plaintiff relies on the cases of Ever-Tite Roofing Corporation v. Green, La. App., 83 So.2d 449, and Housecraft Division *520 of Southern Siding Co. v. Jones, La. App., 120 So.2d 662.
We are of the opinion that the Ever-Tite case cited by Plaintiff represents a substantially different factual situation from that involved in the present litigation. In the cited case defendant entered into a contract having similar provisions to that herein involved in respect to the acceptance of the contract by the principal with the exception that the language in the Ever-Tite contract provided:
"`This agreement shall become binding only upon written acceptance hereof, by the principal or authorized officer of the Contractor, or upon commencing performance of the work. * * *'"
In the Ever-Tite case the Court held that actual commencement or performance of the work under the contract had begun prior to any notice of dissent being given by defendants to plaintiff and therefore the offer and acceptance became a completed contract making defendants responsible for damages sustained by plaintiff because of the cancellation of the contract.
In the Housecraft case defendants offered to have plaintiff perform certain services for them, signing a written contract for the performance of the work on July 18, 1957. Though the contract was not formally accepted by plaintiff until September 2, 1957 work under the contract was commenced by plaintiff prior to that date, and the contract was, in fact, accepted in writing in accordance with the agreement on September 2, 1957 prior to the date of September 27 when defendants first made their endeavor to recede from their agreement, at which time plaintiff had signed the contract, had completed a portion of the work, had delivered material for the other work to be performed to the job site and the Court held that defendant could not then cancel the contract without liability for damages suffered by plaintiff.
Plaintiff maintains that implicit in the contract was a time limitation for the acceptance predicated upon his obtaining a loan for the Defendants to finance the contemplated improvements and that Plaintiff having accepted the contract in a reasonable time, Defendants, despite their cancellation of their offer prior to the acceptance by Plaintiff, were liable in damages for the cancellation. If a contract unqualifiedly provides that time will be afforded the principal to accept or reject the offer predicated upon making necessary financial arrangements for the offeror, then the offer remains open until such time has elapsed. The language of the contract herein involved in reference to the acceptance by Plaintiff, prepared by Plaintiff, does not extend the time of acceptance contingent upon Plaintiff being given time in which to finance the contract for Defendants, for it is expressly stated that Plaintiff may withhold his acceptance for any reason, capricious or warranted. There is no suggestion that Plaintiff intended by the contract to be bound to accept Defendants' offer provided a loan were obtained. Certainly, if Plaintiff is provided with the opportunity to withhold his acceptance of the offer regardless of the reason, it is only fair that Defendants should be given an equal opportunity to withdraw their offer prior to Plaintiff's acceptance. We find nothing in this instrument which would require Defendants to leave open their offer to Plaintiff for the acceptance of the contract and prior to such acceptance Defendants therefore had a right to cancel their offer.
We are of the opinion that the instrument executed by Defendants on March 7, 1960 was not a binding contract but was merely an offer revokable until accepted by Plaintiff. There being no question but that Defendants had admittedly communicated to Plaintiff notice of their change of intention prior to the acceptance of the offer by Plaintiff, the offer was effectively revoked as provided by LSA-C.C. Article 1800, providing:
"The contract, consisting of a proposition and the consent to it, the agreement *521 is incomplete until the acceptance of the person to whom it is proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract."
And LSA-C.C. Article 1804 reading:
"The acceptance needs (need) not be made by the same act, or in point of time, immediately after the proposition; if made at any time before the person who offers or promises has changed his mind, or may reasonably be presumed to have done so, it is sufficient."
In their reconventional demand Defendants seek damages they allegedly sustained as a result of the recordation of the instrument in the Mortgage Records in St. Tammany Parish. We are in accord with the observations of the Trial Judge that no malice or fraud was proved by Defendants and Plaintiff was acting in good faith, therefore damages sought in the reconventional demand are denied.
In Patterson v. Lumberman's Supply Co., La.App., 167 So. 471, at page 472 the Court made this observation:
"* * * No doubt he has suffered some inconvenience and a little embarrassment because of the inscription of the purported lien, but as defendant acted in good faith in the matter and was prompted solely by a desire to protect itself against loss and then, too, upon advice of counsel, the law affords plaintiff no relief. Absence of malice or ill intent is clearly shown. If the case were of first impression, we would be persuaded to hold that he should recover actual damages sustained as a result of defendant's erroneous action; but it is well settled by our jurisprudence that unless the person causing the inscription of the lien is actuated by malice or ill will, no recovery lies for his unlawful action. Flournoy v. Robinson-Slagle Lumber Co., 173 La. 989, 139 So. 321; Callender v. Marks, 166 So. 891, recently decided by this court, not yet reported (in State report). See, also, Hurwitz v. Lotz, 172 La. 27, 133 So. 351; Girot v. Graham, 41 La.Ann. 511, 6 So. 815; Williams v. Bank of Louisiana, 7 Rob. 316."
For these reasons the judgment of the lower Court is affirmed.