JOHN S. PICKETT, Judge ad hoc.
Plaintiff, AA Home Improvement Company, Inc., a Louisiana corporation, instituted this suit against the defendant, Mrs. Virginia Casern, for damages allegedly sustained by plaintiff as a result of a breach by defendant of a written contract for repairing and painting defendant’s residence. Defendant answered the suit denying liability, and specially plead that the purported contract never came into effect because it was never accepted by plaintiff. The trial court sustained the defendant’s defense and dismissed plaintiff’s suit at its cost. From the judgment thus rendered and signed, the plaintiff appealed.
On November 4, 1961, defendant signed an instrument, which was a printed form prepared by plaintiff, for the purpose of obtaining the services of plaintiff in repairing and painting the residence of defendant situated at 2562 Peace Court, in the City of New Orleans. There was written into the instrument a description of the work to be performed, and the price to be paid therefor. This alleged contract contained the following provisions:
“It is understood by the purchaser that this order is not subject to revision or cancellation after order has been accepted, and agrees that the manufacturer is not to be held responsible for delays caused by strikes, fires, the elements or other causes beyond control, and that the order is not binding upon the A A HOME IMPROVEMENT CO.; INC. until approved and accepted by an executive of the A A HOME IMPROVEMENT CO., INC. No verbal agreement not mentioned herein will be recognized. If this account is placed in the hands of an attorney for collection because of default in payment the undersigned agrees to pay as attorney fee 25% of the unpaid balance then due or $15.00 whichever is greater *625 in amount. In the event Purchaser shall become delinquent on any installment when due then interest at 8% per annum shall run on the unpaid balance until the account is made current.”
At the same time the purported contract was signed, defendant signed an application for financing the proposed painting and repair work through the United Credit Plan.
Tuesday, November 7, 1961, plaintiff’s salesman, Adam J. Ouber, and defendant had a conversation about the application for a loan and when the work would be performed. Defendant states that during that discussion she informed the salesman that she did not wish to wait, as suggested by him, until such time as the plaintiff might do the work; and that she was cancelling the proposed contract, and would get some one else to do the work. Plaintiff’s salesman .admitted the conversation about the proposed loan, and that defendant objected to any delay in the performance of the work. However, he denied that she can-celled the contract. Defendant says she called another contractor, that same day; and he began work the following day, November 8, 1961. Plaintiff recorded the contract, still unsigned by its authorized executive, the next day, November 8, 1961. On the same day of the recordation of the contract, plaintiff sent workmen to defendant’s residence where they found two painters already painting defendant’s house. They notified Irwin J. Smith, President of Plaintiff corporation, of the situation. Mr. Smith called defendant and insisted that plaintiff had a contract with her, and that workmen had gone out to her residence to start the job, only to find men painting the house; and that plaintiff expected to be paid for painting her house.
After the foregoing conversation defendant retained an attorney who addressed a letter, dated November 13, 1961, to plaintiff reiterating defendant’s cancellation of the offer to have the work performed by the plaintiff. In the meantime, following the telephone conversation with defendant on November 8, 1961, plaintiff retained an attorney, who by a letter, dated November 10, 1961, informed defendant that in his opinion she had breached her contract with plaintiff, and if necessary, the matter would be settled in court. Defendant denied receiving the letter until about 6:00 o’clock at night November 13, which was after her attorney had sent his letter to plaintiff.
No work was performed under the contract, and this suit for damages in the amount of $450.85, with legal interest thereon from judicial demand, together with twenty-five per centum additional as attorney fees, was instituted by plaintiff.
It is admitted by plaintiff that the written contract was not actually signed by an authorized executive of the plaintiff corporation until some time in December, 1961. Counsel for plaintiff insists that implied in the purported contract was a time limitation for the acceptance conditioned upon plaintiff obtaining a loan from the United Credit Plan, Inc., for the defendant to finance the contemplated improvements. Plaintiff maintains that having secured the approval of the proposed loan, and having sent the workmen to the residence of defendant to start the work, constituted an acceptance of the contract by plaintiff, and that defendant could not thereafter recede from the contract.
In support of plaintiff’s contention counsel for plaintiff relies on the cases of Ever-Tite Roofing Corporation v. Green, La.App., 83 So.2d 449, and Housecraft Division of Southern Siding Co. v. Jones, La.App., 120 So.2d 662.
We are of the opinion that the facts and the law applicable thereto, in the case of Loeb v. Johnson, La.App., 142 So.2d 518, recently decided by the Court of Appeal, Second Circuit, are strikingly similar to the facts and applicable law in the instant ease, and the comments by the Court are so pertinent to the issues in this case, that we quote therefrom as follows:
“We are of the opinion that the Ever-Tite case cited by Plaintiff rep *626 resents a substantially different factual situation from that involved in the present litigation. In the cited case defendant entered into a contract having similar provisions to that herein involved in respect to the acceptance of the contract by the principal with the exception that the language in the Ever-Tite contract provided:
“ ‘ “This agreement shall become binding only upon written acceptance hereof, by the principal or authorized officer of the Contractor, or upon commencing performance of the work. * * * » ) »
In the Ever-Tite case the Court held that actual commencement or performance of the work under the contract had begun prior to any notice of dissent being given by defendants to plaintiff and therefore the offer and acceptance became a completed contract making defendants responsible for damages sustained by plaintiff because of the cancellation of the contract.
“In the Housecraft case defendants offered to have plaintiff perform certain services for them, signing a written contract for the performance of the work on July 18, 1957. Though the contract was not formally accepted by plaintiff until September 2, 1957, work under the contract was commenced by plaintiff prior to that date, and the contract was, in fact, accepted in writing in accordance with the agreement on September 2, 1957, prior to the date September 27 when defendants first made their endeavor to recede from their agreement, at which time plaintiff had signed the contract, had completed a portion of the work, had delivered material for the other work to be performed to the job site and the Court held that defendant could not then cancel the contract without liability for damages suffered by plaintiff.
“Plaintiff maintains that implicit in the contract was a time limitation for the acceptance predicated upon his obtaining a loan for the Defendants to finance the contemplated improvements and that Plaintiff having accepted the contract in a reasonable time, Defendants despite their cancellation of their offer prior to the acceptance by Plaintiff, were liable in damages for the cancellation. If a contract unqual-ifiedly provides that time will be afforded the principal to accept or reject the offer predicated upon making necessary financial arrangements for the offeror, then the offer remains open until such time has elapsed. The language of the contract herein involved in reference to the acceptance by Plaintiff, prepared by Plaintiff, does not extend the time of acceptance contingent upon Plaintiff being given time in which to finance the contract for Defendants, for it is expressly stated that Plaintiff may withhold his acceptance for any reason, capricious or warranted. There is no suggestion that Plaintiff intended by the contract to be bound to accept Defendants’ offer provided a loan were obtained. Certainly, if Plaintiff is provided with the opportunity to withhold his acceptance of the offer regardless of the reason, it is only fair that Defendants should be given an equal opportunity to withdraw their offer prior to Plaintiff’s acceptance. We find nothing in this instrument which would require Defendants to leave open their offer to Plaintiff for the acceptance of the contract and prior to such acceptance Defendants therefore had a right to cancel their offer.”
Although plaintiff denies that defendant cancelled the contract during her conversation with plaintiff’s salesman, November 7, 1961, there is no question but that defendant, through her attorney, reiterated her cancellation of the contract in the letter dated November 13, 1961; and that was prior to the acceptance of the con *627 tract by an executive of the Plaintiff corporation, which was in December 1961. We are of the opinion that the instrument signed by Defendant November 4, 1961, was not a binding contract, but was merely an offer revocable until accepted; and that it was effectively revoked, as provided in LSA-C.C. Article 1800, which provides :
“The contract, consisting of a proposition and the consent to it, the agreement is incomplete until the acceptance of the person to whom it is- proposed. If he, who proposes, should before that consent is given, change his intention on the subject, the concurrence of the two wills is wanting, and there is no contract.”
For these reasons the judgment of the trial court is affirmed; the appellant to pay the costs of this appeal.
Judgment affirmed.