EDWARDS, Judge.
This is a suit by Capitol Steel, Inc. (Capitol) against Ross E. Cox [1] for the balance due on sales of wire mesh and other steel products. The defendant answered denying any indebtedness to Capitol and reconvened for damages occasioned by Capitol’s refusal to furnish wire mesh and other steel products under the terms of an existing contract. After trial on the merits, judgment was rendered in favor of Cox, dismissing Capitol’s demand, and granting judgment against Capitol on the reconventional demand. Prom this judgment, Capitol has appealed.
Ross E. Cox is a construction contractor who for many years prior to this suit had purchased steel products from Capitol, a steel products supply firm. The present controversy stems from two construction contracts awarded Cox for the improvement of the White Bayou-Baker Canal Diversion project (White Bayou).
White Bayou is a large existing canal which forms a portion of the drainage system of East Baton Rouge Parish. The improvement of the canal involved excavation and concrete-lining of the bottom and sides of the canal. The total project for the improvement of White Bayou was divided into five separate projects or phases, with *251 the contract for each phase being awarded independently. Cox was the successful bidder on both the first and second phases of the project and signed contracts for these phases with the City-Parish governing body on March 8, 1971 and December 13, 1971 respectively. The contracts provided that the first phase would be completed within 300 calendar days after issuance of a work order and the second phase within 360 calendar days of the appropriate work order. Additionally, the contract for the second phase of the project stated:
“the worjk order on this project will not be issued until such time as the contractor on the first section has completed pouring 6 inch concrete revetment on the channel bottom and the project is ready to receive large volumes of stored water as determined by the Engineer.”
On December 15, 1971, Capitol and Cox executed two purchase orders which called for Capitol to furnish, at specified unit price f.o.b. — jobsite, certain steel products to be used in the construction at White Bayou. The principal products involved were six gauge wire mesh at $30.00 per roll and reinforcing steel at $8.80 per hundredweight. The purchase orders bear different project numbers[2] and refer to different quantities of material, but both require that material be furnished “in strict accordance with plans, specifications and all addenda” on the referenced projects. In the blank space following the words delivery date requested, the first purchase order (P-1) contains the words “as required” and the second purchase order (P-2) contains “as requested.”
Capitol subsequently began deliveries under the first purchase order (P-1) and the products covered by this order were ultimately delivered without incident.
The present controversy concerns the steel products to be delivered under the second purchase order (P-2). The work order for the second phase construction was issued on April 5, 1973.
On June 5, 1973, the manager of Capitol, Tom Wylie, after being informed that considerable materials were yet to be ordered under the second purchase order (P-2) wrote to Cox requesting a price increase on the wire mesh to be delivered. This request was based on the fact that steel prices, which had remained relatively stable for many years, had begun to rise sharply during the 2nd quarter of 1973. Cox, by return letter of June 7, 1973, rejected any price increase beyond the purchase order price, but invited further discussion. Thereafter certain deliveries were made and invoiced under the purchase order.[3]
On October 19, 1973, Capitol informed Cox that it would not continue to deliver steel at the purchase order price. Capitol was placed in default on October 22, 1973.
Some shipments of steel products were subsequently made under a “reservation of rights” agreement. This agreement was ultimately abandoned and Cox purchased the remainder of the steel required for the job at a substantially higher price from another supplier.
Thereafter, Capitol instituted this suit to recover the sum of $28,783.58, subsequently amended to $31,312.41, as the amount due at the current prices for steel delivered after the decision not to supply at the purchase order price. Cox filed a reconven-tional demand seeking damages for breach of contract including the costs in excess of the purchase order price of securing the steel products needed for White Bayou.
Capitol contends that the purchase order stipulates no time for performance, so the law implies a reasonable time, and that this reasonable time had elapsed prior to its decision to increase prices. Therefore, it *252 argues, the contract had lapsed, and it was not obligated to furnish any materials under the purchase order.
The trial court held that the purchase order contained a definite term by virtue of inclusion by reference of the terms of the construction contract between Cox and the City-Parish. Additionally the trial court stated that a reasonable time had not elapsed on October 22, 1973 when Capitol defaulted on the contract.
Capitol contends that the trial court erred in finding that the purchase order contained a stipulated time for performance other than a reasonable time as implied by law; and in failing to find that this reasonable time elapsed before Cox sought to enforce the purchase order.
We pretermit the issue of whether or not the purchase order included by reference the time for performance contained in the construction contract, since the record is clear that in any event a reasonable time as implied by law had not elapsed when Capitol defaulted on its obligation. This reasonable time is to be determined by the circumstances in each case. Guzzo v. Liggio, 224 La. 313, 69 So.2d 357 (1953); Schnauder v. Rojas, 292 So.2d 754 (La.App. 4th Cir. 1974).
In the instant case, the time period imposed on Cox for completion of construction on the second phase of White Bayou was 360 days, but to run consecutively behind completion of the first phase. This time period was subject to extensions for inclement weather, and fortuitous and unforeseen events beyond the contractor’s control.
Tom Wylie, Capitol’s manager, stated that he had not considered a time frame for performance in signing the purchase order. Indeed the record is clear that time was not a crucial factor in the stable pre-1973 steel market. It appears that the practice of the steel products supply industry was such that materials were sold on an “as requested” or “as required” basis, and this was understood as meaning to be supplied during construction when needed. Had it not been for the sudden and unforeseen price increases during 1973, the record is clear that the time of performance for the second purchase order (P-2) would have, remained consistent with this practice as evidenced by the actions of the parties regarding the first purchase order (P-1).
Three City-Parish engineers testified at trial concerning the magnitude and uncertainties of the White Bayou project. They stated that this was one of, if not the, largest canal improvement projects in the Baton Rouge area. Additionally they testified that construction was often impeded by the weather, soil conditions and the large volume of water flow in the canal. All felt that the contractor, Cox, had proceeded within the applicable time frame and the extensions to which he was entitled on both phases of White Bayou.
We decline to compare the White Bayou project with the numerous other canal projects suggested by Capitol because of the innumerable variables inherent in each. White Bayou is distinguishable from other projects by its size and unusual soil conditions alone.
The trial court concluded after an evaluation of all the facts that the reasonable time for performance as implied by law had not elapsed prior to Capitol’s default since the parties “may be supposed to have contemplated in a general way” a time frame in excess of October, 1973. There is ample evidence in the record to support this conclusion. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Accordingly, we find that Cox was justified in obtaining the steel products from another source after Capitol was placed in default on the purchase order. The trial court properly awarded damages to Cox based on the excess amount paid for the materials above the purchase order price.
Cox has urged us to increase the trial court’s award by giving damages for labor and machinery utilized in loading and transporting the steel products subsequently purchased to the job site. The trial court found, and we agree, that though the evidence establishes that the labor and ma- *253 ehinery were so utilized, Cox failed to prove the value of his damages.
Similarly, Capitol has urged that the credit of $14,217.55 allowed by the trial court, for materials sold and delivered to Cox and not paid for, be increased to $15,-807.55 because of a mathematical miscalculation. Our examination of the record and invoices establishes that this contention is well founded. It appears that 468 rolls of wire mesh and 9,918 pounds of reinforcing steel were sold to Cox and not paid for. These items charged at the purchase order price of $30.00 per roll and $8.80 per hundredweight respectively, plus the applicable sales tax amounts to a credit of $15,807.55.
This credit when deducted from the award for excess cost allowed Cox by the trial court results in a net judgment in favor of Cox in the amount of $2,528.75.
For the reasons assigned, the judgment of the trial court in favor of Ross E. Cox in the amount of $4,118.75 is amended to read the amount of $2,528.75, and in all other respects, the judgment is affirmed at appellant’s cost.
AMENDED AND AFFIRMED.

. This suit was originally brought against Ross E. Cox and Ross E. Cox, Inc. The corporate defendant obtained a summary judgment dismissing the suit against it on April 18, 1976. Capitol has not appealed that judgment.

. The first purchase order is numbered 2131-M, refers to White Bayou No. 70-DR-CI-0102 and was designated by the trial court as P-1. It represents the agreement between the parties regarding the first phase of the construction. Similarly, P-2 is the designation assigned by the trial court to the second purchase order. It is numbered 2132-M and references White Bayou No. 71-DR-CI-0101, the second phase.

. Capitol claims that the invoicing was due to a clerical error and should have been charged at the then current prices.