SHORTESS, Judge.
Georgia-Pacific Corporation (plaintiff) and Charles Frank Haynes, Jr. (defendant) entered into a timber contract on January 25, 1979. Plaintiff was to pay defendant $52,620.84 for 327,000 board feet (MBF) of pine located on defendant’s land in East Feliciana Parish. Plaintiff commenced logging activities and by June 13,1980, had cut all the trees which had been marked by defendant. These trees produced 248,618 MBF of timber. Subsequently, on or about October 15,1980, plaintiff cut an additional 19,963 MBF before defendant had plaintiff’s loggers removed from his property by the Sheriff of East Feliciana Parish. When suitable arrangements could not be made *900 for cutting the timber remaining due under the contract, plaintiff brought suit. A re-conventional demand was filed by defendant seeking damages. After a lengthy trial, the trial court awarded plaintiff the sum of $9,400.78 and dismissed the reconventional demand. Defendant has appealed that judgment.
In the Fall of 1978, defendant’s forestry consultant, Douglas Beard, prepared a prospectus which was submitted to timber buyers in the area, wherein defendant offered to sell marked pine trees[1] located on his land in Section 69, T2S, R1E, East Feliciana Parish. Certain terms and conditions were attached to the prospectus, one of which was that sealed bids must be received prior to October 4, 1978. When defendant received no bid from plaintiff, he called Alfred Tolar (plaintiff’s area procurement manager) to inquire why plaintiff had not submitted a bid. Tolar told defendant that after receiving the prospectus he sent Joe Chapman to estimate the quantity, quality, and cost to haul; but after receiving Chapman’s report decided he could not make a respectable offer because there was not énough volume in the tract. Whereupon, defendant asked whether plaintiff would bid if he guaranteed the volume. Defendant indicated that he needed to sell that much timber because he needed the money. Tolar sent Chapman back to the property to verify the volume of timber. After ascertaining that the volume was there, Tolar made defendant a written offer, dated November 22, 1980, wherein plaintiff bid $52,-620.84 for 327,000 MBF of defendant’s timber, subject to defendant’s written guarantee that there was a minimum of 327,000 MBF available. Defendant accepted the ■ bid, so Tolar sent the closing papers to Richard Kilbourne, plaintiff’s attorney, and instructed him to prepare the necessary documents, which he did. On or about January 25, 1979, defendant came to Kil-bourne’s office, signed the timber deed, and received his money. Defendant testified that he did not read the deed before signing it.
Problems arose almost immediately. Plaintiff’s loggers cut timber marked in yellow and in white, which prompted an immediate complaint. The loggers then only cut trees marked in white, up until June 13, 1980. Defendant also complained that plaintiff’s loggers were clear cutting[2] rather than select cutting the area. Defendant further complained that the timber was not properly measured and cut.[3]
A major issue in this appeal is that plaintiff failed to insert in its timber deed the conditions provided for in defendant’s prospectus. Beard testified that Joe Chapman was familiar with the prospectus and knew that the trees marked with white paint were to be cut first and that there was to be no clear cutting. This contract, notwithstanding the bid prospectus, was negotiated during a telephone conversation between Tolar and defendant, which was instigated by defendant because he was anxious to close a deal with plaintiff. In the telephone conversation and in the timber deed, defendant guaranteed 327,000 MBF.[4] Plain *901 tiff fulfilled its obligation when it paid the agreed amount of $52,620.84 to defendant. Thereafter, it became the obligation of defendant to provide the 327,000 MBF of timber.[5]
Defendant’s failure or neglect to read the timber contract before signing it provides him no defense, because it is well settled that when a party having the capacity to read an instrument signs it without reading it, he is bound by it. South Central Bell Telephone Company v. McKay, 285 So.2d 563 (La.App. 1st Cir.1973). Additionally, when plaintiff questioned the volume available and insisted upon defendant’s written guarantee, defendant, as a diligent and reasonable businessman, should have read the contract before signing it. Defendant insists that he signed through error, mistake or fraud.[6] He testified that Beard and Chapman talked about the pro- , spectus, so he assumed that the conditions thereof were incorporated in the contract. An error that does not go to the principal cause of a contract will not invalidate it. LSA-C.C. Art. 1823. Here, there was a sale; the principal cause was the agreement to buy and sell 327,000 MBF of timber for $52,620.84. Defendant failed to show any error, mistake or fraud as to the principal cause of the contract of sale.
The trial judge in his written reasons said:
“From the many hours of testimony, there were charges and counter charges, claims and counter claims, and it remained for the court to decide which witnesses were credible and which were not. In determining the credibility of the witnesses, I in turn took into consideration what one group of witnesses had to gain as opposed to the other. I also considered activities of the defendant in making sev- , eral efforts to carry out the terms of the timber deed up until a short time before when I consider the actual breach occurred (the removal of plaintiff’s agents by sheriff’s deputies).
Plaintiff’s employees or agents had nothing whatsoever to gain by cutting timber it should not have, or of short scaling the timber delivered to its plant. In addition, plaintiff must protect its reputation because of its continuous need to purchase and cut timber from private ownership in order to maintain its mill in operation.
In addition, plaintiff agreed to alternative measures suggested by defendant to fulfill the terms of the contract, but each time the defendant failed to comply.
I do not intend to suggest that defendant intentionally did anything to covertly deprive the plaintiff of the timber purchased, but from the testimony, I am convinced he was mislead (sic) and misinformed by his forester. By defendant’s own testimony, he did not read the timber deed, nor did he keep abreast of the day to day activities of the timber cutting operations. The testimony of the forester indicating he knew 327,000 board feet of timber was not available in his bid prospectus set the scene for the remainder of his activities.”
During argument on the motion for new trial, the trial judge further elaborated and said:
“My opinion was primarily based on the testimony of Douglas Beard, who I did not give much credibility to. That was the basis, the real basis of the opinion of denying the claim because it was just some of the things that he testified to that he did, was just like the fact that he said he knew the timber wasn’t there when he let it out to bid. To me, it started out just like a lie and that’s why I ruled that way and as a procedural matter I just can’t see how this can be done.”
Another issue strongly urged by defendant is that the trial judge erred in failing to *902 weigh all the available evidence and should not have based his opinion upon any supposition of what plaintiff may have had to gain or lose in this case. In assessing credibility, a trier of fact considers and weighs many factors, one of which may be what the parties stand to gain or lose, i.e., their motives. The trial judge did not err in articulating his thoughts on what these parties stood to gain or lose in this matter. Furthermore, we note that it took three days to try this case, and the record is full of repetitious testimony. The trial judge permitted the key witnesses to be recalled to the stand. However, when they returned, they essentially restated their prior testimony. The trial judge had to be aware of all the factors and issues presented. His opinion may not have articulated all the reasons which could have been commented upon, but he did discuss the crux of the case when he discussed the credibility of the witnesses. We are not in a position to say that he was manifestly erroneous in so doing. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Our review of the record convinces us that the trial judge was correct in his factual findings. The issue was very simple. Defendant admitted that he guaranteed 327,000 MBF but did not furnish this amount. He failed to carry his affirmative burden to show error, mistake, or fraud, or even that plaintiff’s figures were erroneous. While there was some general testimony from Beard and Malcolm Vines that through field errors improper scaling was permitted, these complaints did not surface until June of 1980, and were not specific enough for any conclusion to be derived therefrom.
The judgment of the trial court is affirmed at defendant’s costs.
AFFIRMED.

. Beard marked 1,250 trees with white paint, putting a spot at eye level and another spot at the stump. He estimated that these trees would produce 327,000 MBF, in the prospectus. At trial he admitted that he overestimated because he was representing the seller.

. This is a technique used in timber cutting where everything in an area is cut, as opposed to select cutting, where only designated trees are cut. Plaintiffs employees acknowledged that they knew they were to select cut. Both Tolar and Chapman testified that, after receiving the clear cutting complaint, they went to the site and saw no clear cut area.

. In October, 1980, defendant and Beard came to Tolar’s office to complain about an error in scaling, which they alleged was done in June of 1980 on fourteen loads hauled by Malcolm Vines.

.The record does not indicate that defendant’s prospectus or any other conditions were ever mentioned in the telephone conversation. The signed timber contract sets forth, “327 thousand board feet of pine saw-timber marked with white and yellow paint. ...” The pro- • spectus provided for, “All Loblolly Pine trees, marked by the seller, or his agent, with WHITE paint spots below stump height and at eye level.” It was after Tolar questioned the volume as represented by the prospectus that defendant agreed to guarantee 327,000 MBF.

. Defendant’s argument over which trees were to be cut first begs the issue. After all the white trees were cut, it became his obligation -to make available sufficient trees to make up the difference, which defendant did not do.

. Fraud or mistake must be specifically pled and neither was. La.C.C.P. Art. 856. Plaintiff timely objected. Regardless, the record shows no proof of fraud or mistake.