542 So.2d 747 (1989)
Eugene HARLEAUX and Roland J. Barbarin d/b/a H. & B. Contractors
v.
Thomas G. WOOD.
No. 88-CA-2319.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Writ Denied June 2, 1989.
*748 Edward D. Wegmann, Anne Horton-Breaux, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiffs-appellants.
M. Arnaud Pilie, Pilie, Pilie and Landry, New Orleans, for defendant-appellee.
Before BARRY, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
Following the dismissal of plaintiffs' suit for liquidated damages because the trial court found no construction contract, plaintiffs filed this appeal claiming their bid proposal ripened into a construction contract after both parties signed the agreement so that defendant is liable under the liquidated damages provision of the contract for its rescission from the agreement.
This suit on a bid proposal/construction contract was tried before a commissioner, pursuant to LSA-R.S. 13:1171, who found that a contract existed between the parties and recommended to the district court that plaintiffs, Eugene Harleaux and Roland Barbian d/b/a H. & B. Contractors, be awarded the sum of $17,136.41 as liquidated damages under the contract, along with interest and costs. Defendant, Thomas Wood, filed his exceptions to this recommendation and, following its review of the trial transcript and parties' memoranda, the district court maintained defendant's exceptions and rendered judgment in favor of Wood, dismissing plaintiffs' demands at their cost. On appeal, plaintiffs contend that their August 29, 1985 bid proposal contains all the essential elements of a contract and ripened into a contract after both parties assented to its terms. We agree. The bid proposal contains all the essential elements of a contract, with a reasonable time for completion being implied by law. The document also contains a clause which provides that the agreement would not become a binding contract until plaintiff accepted it in writing. Therefore, when Wood signed the proposal, it became an offer that ripened into a contract upon H. & B.'s acceptance. Wood's subsequent attempt to recede from the agreement was a breach of contract rendering him liable under the liquidated damages provision.
FACTS AND PROCEDURAL HISTORY
Defendant, Thomas G. Wood, operates two bars at 901 Rue Bourbon, New Orleans. In 1985, he hired Leon Impastato, an architect, to represent his interests in renovating both the upstairs and downstairs bars. During July of 1985 Impastato *749 contacted plaintiffs, Eugene Harleaux and Roland Barbarin of H. & B. Contractors (H. & B.), requesting they submit a bid for Wood's construction project. Due to Impastato's forty year work relationship with H. & B., he knew that H. & B. had worked on the renovation of the premises fifteen years previously and would be familiar with the building. Consequently, Impastato did not seek bids from any other contractors.
After reviewing Impastato's plans and the construction site, H. & B. submitted to Impastato a two page bid proposal dated August 29, 1985. The proposal was to perform the work as detailed for the price of $85,682.07. The proposal also contained the following provisions:
This order shall become binding upon acceptance thereof by Contractor and shall not be deemed to be a bid in any sense of the word. However, upon acceptance of same by Contractor, it shall thereafter be treated as a contract between the undersigned owners and the Contractor.
Contractor to perform all work in good and workmanlike manner.

This agreement shall not be binding on Contractor unless properly accepted by the Contractor, by an officer or member of Contractor's firm, and is not subject to cancellation except by mutual written consent of all parties hereto.

Owner agrees that in event of cancellation of this contract before work is started, owner shall pay to Contractor on demand twenty (20%) per cent of the contract price as its liquidated damages for the breach.
It is further mutually agreed that this contract may be assigned by Contractor, and that where the term "Contractor" is used herein, it shall be construed to mean assigns, and that the terms and agreements herein contained shall bind, apply and inure to the heirs, assigns, successors, executor and administrators of the parties hereto.
Owner or owners hereby agree that at no time during the period of construction will they interfere in any way whatsoever with the performance of the work.
It is mutually agreed that should there be any alterations in the above contract, owner agrees to pay to Contractor any costs incurred by change.

The undersigned acknowledges receipt of a true copy of this contract, acknowledges that he has read and knows the contents thereof, and understands that no other agreement, verbal or otherwise, is binding upon the parties thereto, and that same contains the entire contract. (emphasis added)
Impastato forwarded this proposal to Wood and, after the two discussed the proposal, Wood signed the proposal on the line provided for the owner's acceptance. Wood then returned the document to Impastato who filed the original and mailed a photocopy to H. & B. Upon H. & B.'s receipt of the photocopy of the bid proposal signed by Wood, Harleaux signed the document and placed it in H. & B.'s file on Wood.[1]
About the time Harleaux signed the bid proposal for H. & B., the parties had already begun to discuss additional items (add-ons) that needed to be performed at 901 Rue Bourbon. On October 17, 1985, Impastato sent H. & B. an informal (hand-written) memo about add-ons and on October 29, 1985 he sent a formal (typed) memo about add-ons that provided:
I just spoke to Mr. Woods [sic] of 901 Bourbon street and there are a few items that he would like for you to add in your next bid.
1. Bar, up or down can not be closed more then four (4) days at one time.

2. How long it will take you to complete the job as he does not want it to run into Christmas and the new year.

3. Cost to install the brass rail and other items even though he is going to furnish brass. He wants to know how much *750 money needs for the complete job. (emphasis added)
On the bottom of this memo there was also a hand-written note from Impastato stating "we will begin the job on Nov. 11".[2] However, as the November 11th commencement date was not agreeable to H. & B., Harleaux recommended to Impastato that renovations begin February 15, 1986, the day after Mardi Gras. During the same period of time, H. & B. telephoned to Impastato its pricing proposal for the add-ons. Impastato, in turn, communicated this information to Wood via letter dated November 8, 1985. This proposal for add-ons in the amount of $18,798.45 was subsequently submitted to Wood in a formal bid proposal on January 6, 1986.
The January 6th add-on bid proposal also contained the provision that the job required sixty (60) working days. When Wood received this add-on bid proposal, with its sixty working day provision, he was furious. He told Impastato that because he could not accept the sixty-day time frame, Impastato would need to look for another contractor.[3] This information was not immediately conveyed to H. & B., instead H. & B. was apprised of the situation approximately a week before Mardi Gras, when Impastato telephoned H. & B. with an offer for another job bid. Following Harleaux's response that H. & B. could not make the bid because of Wood's job, Impastato informed Harleaux that Wood's job was being performed by another contractor. Thereafter, H. & B. sent Wood a demand letter stating that their construction contract (August 29, 1985 bid proposal) was binding.
H. & B. filed suit on April 17, 1986, claiming liquidated damages of $17,136.41 under the construction contract (August 29, 1985 bid proposal) for renovation services at 901 Rue Bourbon in the amount of $85,683.07. On May 6, 1988, the suit was tried before a commissioner, pursuant to LSA-R. S. 13:1171, who found there was in fact a contract which was to be completed within a reasonable time, and who recommended plaintiffs be awarded the sum of $17,136.41 as liquidated damages, together with interest and costs. Wood excepted to the commissioner's report. And after reviewing the transcript of the trial testimony, the parties memoranda and the commissioner's report, the district court granted judgment in favor of defendant, dismissing plaintiffs' demand at their cost. The court's reasons for judgment indicate that the document dated August 29, 1985 was merely a bid proposal that never became a valid contract because of no meeting of the minds. From the district court's judgment, plaintiffs appeal.
EFFECT OF THE COMMISSIONER'S RECOMMENDATIONS
Plaintiffs initially contend that it was improper for the trial court to reverse the commissioner's credibility determinations as the trial court did not find the commissioner's determinations manifestly erroneous. This claim, however, is without merit.
LSA-Const. Art. 5, § 22 confers on a litigant the right to have his case decided by an elected judge and not by a commissioner appointed by the judges pursuant to LSA-R.S. 13:1171. Accordingly, the commissioner's role is limited to gathering facts and making recommendations to the trial judge. The trial judge is vested with the ultimate authority to render final judgment, as LSA-R.S. 13:1171 does not purport to vest judicial power in commissioners since they cannot render judgment.
*751 Whitney Nat. Bank of New Orleans v. Derbes, 436 So.2d 1185, 1192 (La.App. 4th Cir.1983), writ den., 441 So.2d 1220 (La. 1983), cert. den., 466 U.S. 938, 104 S.Ct. 1912, 80 L.Ed.2d 460 (1984); See also Boe v. Lake Forest, Inc., 384 So.2d 850, 851 (La.App. 4th Cir.1980); Quarles Drilling Corp. v. Gen. Acc. Ins. Co., 520 So.2d 475, 476 (La.App. 4th Cir.1988); Jones v. New Orleans Legal Asst. Corp., 535 So.2d 33 (La.App. 4th Cir.1988). Therefore, the commissioner's recommendation is of no importance in this appeal, Boe v. Lake Forest, Inc., 384 So.2d at 852, and it is only the trial court's judgment that is on review.
CONTRACT VEL NON
H. & B. Contractors contend that the bid proposal of August 29, 1985 ripened into a construction contract after both parties signed the document and H. & B. communicated its assent to Wood through its conduct. H. & B. Contractors also contend that, as there is no express provision within the contract, the time for completion of the contract is impliedly a reasonable time and defendant's request to plaintiffs for subsequent (remedial) bids has no effect on the validity of their signed contract. Wood, on the other hand, insists that because H. & B. sent him an unsigned bid proposal, the document was not a contract, but a bid proposal and remained so even after Wood signed it. Next, Wood insists that he never sent the signed bid proposal back to H. & B. so that he never communicated his acceptance.[4] Finally, Wood contends that because immediately after H. & B. received the photocopy of the bid proposal with Wood's signature on it, H. & B. signed the photocopy and placed it in its own files, H. & B. never communicated its acceptance to Wood.
Wood's assertion, that because H. & B. sent him the August 29, 1985 bid proposal without signing it, the document was not a contract but a bid proposal and remained so even after Wood signed it, is correct. Housecraft Division of Southern Siding Co. v. Jones, 120 So.2d 662 (La.App.Orleans 1960); Loeb v. Johnson, 142 So.2d 518 (La.App. 1st Cir.1962); AA Home Improvement Co. v. Casem, 145 So.2d 624 (La.App. 4th Cir.1962); Ever-Tite Roofing Corp. v. Green, 83 So.2d 449 (La.App. 2d Cir.1955). However, once Wood affixed his signature to the bid proposal,[5] he was bound by the terms of his offer, unless he revoked it prior to H. & B.'s acceptance. LSA-C.C. art. 1937.
After Wood signed the document and plaintiff's agent, Impastato, delivered a copy of the document to H. & B., Wood had the opportunity to withdraw his assent to the bid proposal prior to H. & B.'s acceptance. AA Home Improvement Co. v. Casem, 145 So.2d at 626. Our jurisprudence is replete with construction contract cases with acceptance provisions, similar to the one sub judice, in which a homeowner signed the proposed contract but prior to the contractor's acceptance thereof withdrew his consent, cancelling the proposed contract without incurring liability. Loeb v. Johnson, 142 So.2d at 520 [the offer was revocable until accepted by plaintiff/contractor; therefore, when defendant/homeowners communicated to plaintiff notice of their change of intention prior to the acceptance of the offer by plaintiff, the offer was effectively revoked]; City Glass & Mirror Co. v. Charles Carter & Co., 144 So.2d 240, 243 (La.App. 1st Cir.1962); Cf. Ever-Tite Roofing Corp. v. Green, 83 So. 2d 449 (La.App. 2d Cir.1955); National Roofing & Siding Co. v. McIntosh, 359 So.2d 1315, 1316 (La.App. 4th Cir.1978). However, when Wood did not give notice of his intent to recede from the agreement until February of 1986, well after H. & B. had signed the August 29th bid proposal, it was too late for Wood to cancel the contract *752 without liability. Housecraft Division of Southern Siding Co. v. Jones, 120 So.2d at 664.[6]
The bid proposal became a construction contract upon H. & B.'s acceptance, binding both H. & B. and Wood, because the parties altered the general rule which holds a contract is not perfected until the offerer receives notice of the offeree's acceptance. Aguillard's Enterprises, Inc. v. Smith, 439 So.2d 1158, 1160 (La.App. 4th Cir.1983), writ den., 444 So.2d 1224 (La.1984). By the terms of their agreement, H. & B. did not need to communicate its assent to Wood in order to perfect the contract, as the agreement provided:
[t]his order shall become binding upon acceptance thereof by Contractor and shall not be deemed to be a bid in any sense of the word. However, upon acceptance of same by Contractor, it shall thereafter be treated as a contract between the undersigned owners and the contractor.
Cf. Ever-tite Roofing Corp. v. Green, 83 So.2d 449 (La.App. 2d Cir.1955) [Although an improper agent signed contract for plaintiff, so that his signature was ineffective, plaintiff accepted by performance according to the terms of the contract without notice of acceptance being given to defendant]. Regardless, Wood received notice of H. & B.'s acceptance through H. & B.'s conduct. And Wood's awareness of this assent is evidenced by Impastato's hand-written memo to H. & B. that "we will begin the job on November 11th".
Moreover, the existence of the contract was not dependent upon whether the contract contained terms that Wood might deem essential. Under the terms of their contract, the parties acknowledged that they read and understood the contents of their agreement and understood that no other agreement "verbal or otherwise is binding upon the parties thereto, and that same contains the entire contract". As it is not a mere ornament, Wood is bound by his signature. Housecraft Division of Southern Siding Co. v. Jones, 120 So.2d at 662 [Signatures to obligations are not mere ornaments; if a party can read, it behooves him to examine the instrument before signing it]. Cf. South Central Bell Telephone Co. v. McKay, 285 So.2d 563, 565 (La.App. 1st Cir.1973) [in the absence of fraud, a person signing a written document is presumed to know its contents. And he may not avoid the obligations contained therein by claiming he did not read the instrument]; Georgia-Pacific Corp. v. Haynes, 432 So.2d 899 (La.App. 1st Cir.1983). And the parties' meaning and intent to the written contract is to be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. arts. 1848, 2046; Tauzin v. Claitor, 417 So.2d 1304 (La.App. 1st Cir.1982), writ den., 422 So.2d 423 (La.1982); McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1st Cir.1982), writ den., 430 So.2d 94 (La.1983). Consequently, the district court erred in finding no contract because of the evidence of Wood's (subsequent) requests to H. & B. for bid proposals on add-ons and of the absence of a "time for completion" provision in the contract.[7]
Based upon the foregoing, we find the trial court clearly erred by finding the parties did not confect a valid construction contract. Louisiana law favors the formation of contracts, Spiers v. Seal, 426 So.2d 631, 634 (La.App. 1st Cir.1982), writ den., 433 So.2d 150 (La.1983), and the parties' construction contract contains all the elements essential to a contract, with a reasonable *753 time for completion implied by law. See Capital Steel, Inc. v. Cox, 346 So.2d 249 (La.App. 1st Cir.1977). Wood's act of signing the bid proposal, combined with his agent Impastato's act of delivering a copy of the document to H. & B., constituted an offer which Wood failed to revoke prior to H. & B.'s acceptance thereof. As a result, a valid construction contract was perfected and Wood's subsequent breach renders him liable under the contract's liquidated damages provision. The decision of the district court is, therefore, reversed and judgment is rendered in favor of plaintiffs and against defendant in the sum of $17,136.41 plus interest from date of judicial demand until paid, with all costs assessed against defendant.
REVERSED AND RENDERED.
NOTES
[1] At trial, Harleaux testified that when he placed his signature on the photocopy, he believed H. & B. had a contract to do the work according to the plans and specifications Impastato had issued, for the price of $85,682.07.
[2] Harleaux testified that Impastato never told him Wood's job (901 Rue Bourbon) would be put on an AIA contract or would be under a single contract. Contrarily, Impastato testified that it was his policy ("most of the time") to write up AIA contracts because AIA contracts protect his clients. However, the contractor that eventually renovated 901 Rue Bourbon did not have an AIA contract with Wood/Impastato.
[3] At trial, Impastato, Fassbender (the plumber) and Wood testified that Wood repeatedly told plaintiffs the bars could not be closed for more than 30 days. Wood emphatically stated that he had communicated the 30 day time for completion period throughout his negotiations with H. & B. Plaintiffs, however, testified that it was not until after they had signed the August 29th bid proposal and/or until the October 29th memo that plaintiffs were told of the 30 day time limit.
[4] Wood admits that Impastato sent a photocopy of the signed original to H. & B.
[5] Wood admits that he signed the original of the bid proposal (ex. D-1). However, some confusion resulted at trial because Wood claimed the document that was signed by Harleaux for H. & B. (ex. P-1), which is the construction contract being sued upon, contains a "forgery" of Wood's signature. There is no forgery: Wood admits that on Impastato's advice, he signed the original of the bid proposal (ex. D-1). Subsequently, Impastato sent a photocopy of the signed bid proposal to H. & B. and H. & B. signed the photocopy (ex. P-1).
[6] The evidence indicates that at the time of Wood's request for add-ons, the August 29, 1985 bid proposal had already been signed by both parties. Therefore, additional bids would have no effect on the validity of that agreement. Additionally, the August 29, 1985 bid proposal/construction contract contains a provision for mutually agreed upon alterations to the original contract.
[7] Acceptance need not be by the same act or instrument. Former LSA-C.C. art. 1804; Union Sawmill Co. v. Mitchell, 122 La. 900, 48 So. 317, 318 (1909); Johnson v. Shreveport Properties, Inc., 213 La. 485, 35 So.2d 25, 30 (1948); Advertiser, Division of Independent Inc. v. Tubbs, 208 So.2d 340, 343 (La.App. 3d Cir.1967, writ den., 251 La. 1084, 208 So.2d 537 (1968); See also Van-Trow Olds-Cad-Toyota, Inc. v. Wiggins, 516 So.2d 1261 (La.App. 2d Cir.1987).